A97A1700. CHEESMAN v. THE STATE.
(497 SE2d 40)

RUFFIN, Judge.

A Rockdale County jury found Jerry Cheesman guilty of possession of more than one ounce of marijuana and possession of marijuana with the intent to distribute. Cheesman filed this pro se appeal, asserting, inter alia, insufficiency of the evidence, ineffective assistance of counsel, improper commentary by the State during closing argument and errors by the trial court in the jury charges and throughout the trial. We affirm.

Viewed in a light most favorable to support the verdict, the evidence shows that in April 1995 Agent Chris Cannon of the Walton County Sheriff's Department's East Metro Drug Enforcement Team was advised by a confidential informant that a man traveling from

Ohio was interested in purchasing 100 pounds of marijuana. On April 11, 1995, the informant notified Cannon that the individual, Cheesman, was in Conyers, Georgia. The informant set up a meeting between Cannon and Cheesman for April 12, 1995. The officer had the meeting with Cheesman recorded. During the meeting, Cheesman took Cannon to Cheesman's car to show Cannon the money he had to make the purchase. Cheesman agreed to purchase 15 pounds of marijuana and arranged to complete the transaction later that afternoon outside a video store. Cannon thereafter obtained the marijuana from the Georgia Bureau of Investigation, which was packaged in four one-pound bags and one eleven-pound bag. Cannon placed the marijuana in a duffel bag and put the duffel bag in the back compartment of his undercover vehicle, a Ford Bronco.

Cheesman was waiting in his car at the video store when Cannon arrived at the designated time and pulled his car into an adjacent parking space next to Cheesman. After briefly speaking with one another, Cannon and Cheesman exited their cars. Cannon went to the back of his Bronco and lifted the hatch. Cheesman met him at the back of the Bronco with a bag containing the money he had earlier shown Cannon. After placing the money in the back of the Bronco, Cheesman removed and inspected each of the bags of marijuana. When Cheesman finished his inspection of the bags and began to place the bags back in the duffel bag, Cannon gave an arrest signal to backup officers who came forward and arrested Cheesman. Police seized from Cheesman $13,000 in cash along with a set of scales.

1. We find that there is sufficient evidence in the record for a rational trier of fact to find Cheesman guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). "Possession of marijuana may be actual or constructive, and the evidence here would authorize a jury to find that [Cheesman], at the very least, was in constructive possession of the marijuana, since he exercised dominion or control over it. [Cit.]" *Hadden v. State*, 181 Ga. App. 628 (1) (353 SE2d 532) (1987). Furthermore, there was uncontroverted testimony that the quantity of drugs involved in this case is generally used for distribution and not for personal use.

2. Cheesman asserts that certain exculpatory evidence was withheld by the State. However, Cheesman has not cited any evidence of record showing exculpatory evidence was withheld from him or that he timely objected. As this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court. See *Bennett v. State*, 187 Ga. App. 234, 235 (369 SE2d 552) (1988).

3. Additionally, Cheesman has waived other enumerated errors by failing to object at trial.

(a) Cheesman argues on appeal that the rule of sequestration was violated because Agent Cannon was allowed to remain in the courtroom throughout the trial. Cheesman has not shown that he objected at trial. *Bennett*, supra.

(b) Cheesman also maintains that it was error to admit the recording of his initial conversation with Agent Cannon as well as a videotape made of the drug transaction at the video store. Again, however, Cheesman has failed to show that he objected to the admission of this evidence. See *Chesser v. State*, 228 Ga. App. 164, 165 (1) (a) (491 SE2d 213) (1997).

(c) Cheesman asserts that the trial court should have questioned jurors regarding the effect a newspaper article regarding his case had on their objectivity. Cheesman has not shown that he requested such questioning or that he raised the issue at trial. See *Bennett*, supra.

(d) In reading the indictment to the jury, the trial judge mistakenly said that Cheesman was charged with possession of more than one ounce of marijuana on April 27, 1995, when the actual date was April 12, 1995. Although Cheesman asserts this as error, there is no evidence that he objected at trial. See *Lawson v. State*, 224 Ga. App. 645, 646 (2) (481 SE2d 856) (1997).

As none of the issues were raised below and timely preserved, there is nothing for us to review on appeal. *Bennett*, supra; *Lawson*, supra; *Chesser*, supra.

4. Cheesman asserts that his counsel should have been allowed to cross-examine Agent Cannon using hypothetical questions about Cheesman's actions during the transaction and arrest as well as Agent Cannon's understanding of the term "possession."

During cross-examination, Cheesman's counsel questioned Cannon regarding Cheesman's actions immediately prior to the arrest. Cannon explained that he gave the arrest signal after Cheesman placed the bags of marijuana back into the larger bag because he did not want Cheesman to have the opportunity to take the contraband back to Cheesman's car. Defense counsel then asked Cannon "[w]hat if at that point in time [prior to the arrest] Mr. Cheesman looked at you and said, no dice, I want no part of this?" The trial court disallowed the question as it was a hypothetical question not based on facts in evidence. We agree with the trial court, for "[a] hypothetical question to a nonexpert witness on cross examination must be based on facts in evidence. [Cits.]" *Scarver v. State*, 130 Ga. App. 297, 298 (3) (202 SE2d 850) (1973). Here, there was no evidence that Cheesman attempted to back out of the transaction, and thus the hypothetical question was improper.

Additionally, the trial court did not err in preventing Cheesman from questioning Cannon about Cannon's own definition of "posses-

sion" since that was a question of law to be addressed by the court. " 'To allow testimony of this kind, would be to allow a witness to testify what the law is. Witnesses must testify to facts, and the court is responsible for the law.' [Cit.]" *Taylor v. State*, 204 Ga. App. 489 (3) (419 SE2d 745) (1992).

5. Cheesman also maintains that the trial court should have granted his motion for mistrial because the State made allegedly improper comments during closing argument. The transcript shows that the State pointed out in closing argument that while Cheesman stated that he came to Georgia from Ohio to sell cars, he was also in the business of purchasing and distributing drugs. Specifically, the State said Cheesman "could come down here, he could swap cars, he could pay cash, he could get his stash of marijuana and go back to Ohio to distribute it. You could tell from the tape that this is not the first time that he has done business like this." Cheesman argued that these comments impermissibly placed his character into evidence and were an attempt to place in the minds of the jury the fact that Cheesman had a past history of buying, selling and distributing drugs when in fact he had only two prior misdemeanor drug offenses.

The comments in this case were not impermissible. " 'The prosecution is permitted to draw deductions from the evidence and these deductions may be illogical, unreasonable or even absurd so long as there is evidence from which such deductions can be made.' [Cit.]" *Clark v. State*, 146 Ga. App. 697 (3) (247 SE2d 221) (1978); see also *Garcia v. State*, 267 Ga. 257, 259 (8) (477 SE2d 112) (1996). Agent Cannon's testimony, along with the video and audiotape, provided sufficient evidence of Cheesman's demeanor, actions and conversation with Agent Cannon from which the State could conclude and argue that Cheesman was not inexperienced in such transactions.

6. Cheesman asserts that the trial court erred in failing to charge the jury on abandonment and entrapment. The record shows, however, that Cheesman did not submit a written charge on entrapment or even pursue this affirmative defense at trial. "This court has held that where there has been no written request to charge, failure to give the charge is not error. [Cits.]" *Arnold v. State*, 163 Ga. App. 94, 96 (4) (292 SE2d 891) (1982).

As for the charge on abandonment, there was no evidence presented to support the defense or the charge. " 'The responsibility of producing evidence of an affirmative defense and the burden of persuasion by proof beyond a reasonable doubt are two distinct and separate concepts. The first is placed squarely on the defendant unless the state's evidence raised the issue.' [Cits.]" *Givens v. State*, 211 Ga. App. 290 (1) (439 SE2d 22) (1993), overruled on other grounds, 264 Ga. 522 (448 SE2d 687) (1994). See also OCGA § 16-1-3 (1) (" '[a]ffirmative defense' means . . . unless the state's evidence

raises the issue invoking the alleged defense, the defendant must present evidence thereon to raise the issue"). Cheesman has not shown that either he or the State raised the issue as to abandonment of the crimes.

7. Cheesman next asserts that his trial counsel was ineffective in failing to investigate and prepare for trial, as well as in failing to raise certain objections during the trial and to present defenses of abandonment and entrapment. We disagree.

"[T]he constitutional right to assistance of counsel insures not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. When inadequate representation is alleged, the critical factual inquiry ordinarily relates to whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; [and] whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choices of trial tactics and strategy. The decisions on which witnesses to call, whether and how to conduct cross examinations, what jurors to accept or strike, what trial motions should be made, and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citations, punctuation and emphasis omitted.) *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982).

(a) As for preparation for trial, trial counsel testified at the motion for new trial hearing that he conversed frequently with Cheesman prior to trial regarding trial strategy, defenses and discovery issues.

(b) Regarding the defenses of abandonment and entrapment, the attorney stated that he thought it unwise to pursue the entrapment defense because Cheesman would then have to testify and it was possible his past criminal record would be presented to the jury. He further testified that Cheesman acquiesced in the decision to not pursue the entrapment defense. Defense counsel and Cheesman also agreed not to pursue the abandonment defense. Rather, they chose to pursue the defense that Cheesman never possessed the drugs.

(c) The attorney did not object to the admission of the video and audiotape because he had reviewed the tapes and in his opinion believed they were admissible.

Accordingly, in summary, we find that trial counsel's actions amounted to trial strategy and trial tactics, not ineffective assistance of counsel. *Austin*, supra. See *Smith v. State*, 207 Ga. App. 290, 291 (2) (428 SE2d 95) (1993) (" '(a)s to deficient performance, errors in judgment and tactical errors do not constitute denial of effective assistance of counsel.' "); *Allen v. State*, 199 Ga. App. 365, 367 (6) (405

SE2d 94) (1991).

8. Finally, Cheesman claims that the trial court erred in failing to appoint him appellate counsel. However, the record shows that the trial court appointed Cheesman appellate counsel, but that Cheesman later moved, pro se, to dismiss the attorney. The trial court conducted a hearing during which Cheesman knowingly and voluntarily dismissed appellate counsel and chose to pursue his appeal pro se. " 'We are satisfied that the record shows that [Cheesman] was [made] aware of his right to counsel and of the dangers of proceeding without counsel. This satisfies the standard laid down in *Clarke v. Zant*, 247 Ga. 194, 196 ((275 SE2d 49) (1981)). [Cit.]' [Cits.]" *Cook v. State*, 227 Ga. App. 674, 676 (490 SE2d 181) (1997).

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 11, 1998.

Jerry Cheesman, *pro se.*

*Cheryl F. Custer, District Attorney, Nancy N. Bills, Assistant District Attorney,* for appellee.