## A00A1917. SPIKES v. THE STATE.
(545 SE2d 410)

Pope, Presiding Judge.

Willie Spikes, Jr. appeals from his conviction on one count of robbery. We affirm.

Viewed in the light most favorable to the verdict, the evidence showed that one morning in early September, Spikes and Angela Pitts drove from Jones County to Macon to purchase crack cocaine. Afterward, with Spikes driving, the two spent "hours" smoking crack as they traveled back roads in the area. Eventually, Spikes and Pitts drove to Willie Powell's house in Jones County. Powell, who was 70 years old at the time, was an acquaintance of Spikes and his father. Pitts testified that Spikes paid Powell some money so they could use one of his rooms to smoke crack. Powell was unable to make change, and Spikes told him he would get it later. After smoking crack for a while at Powell's house, Spikes and Pitts returned to Macon to buy more. The pair then continued riding around and smoking crack into the evening until they exhausted their supply. By this time, Spikes told Pitts that he was also out of money, and he returned to Powell's house to get his change so that he could get "another hit" of crack.

Spikes went in the house to retrieve his change. Powell testified that he let Spikes in the house and returned to bed. Spikes came into Powell's bedroom a few minutes later, grabbed Powell around the neck and demanded money. Powell repeatedly denied having any money. Spikes then reached under Powell's pillow and grabbed his wallet, which contained an undisclosed sum. Afterward, Spikes and Pitts left Powell's house and returned to Macon where Spikes purchased more crack cocaine.

1. Spikes first asserts that the state failed to prove his guilt beyond a reasonable doubt. As charged in this case, the State was required to prove that Spikes, with the intent to commit theft, took Powell's property by force. OCGA § 16-8-40. The evidence showed that Spikes came into Powell's bedroom, grabbed him around the neck and demanded money. Spikes then grabbed Powell's wallet and left. This evidence was sufficient to establish the elements of the offense of robbery. See *Watson v. State*, 214 Ga. App. 650, 651 (2) (448 SE2d 718) (1994).

Although Spikes argues that Powell was not very certain in this testimony, that argument goes to the issue of credibility, which is a matter for the jury. An appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Ellis v. State*, 245 Ga. App. 807 (539 SE2d 184) (2000).[1]

---

[1] Similarly, we find no error in the trial court's denial of Spikes' motion for directed verdict. See generally *Christensen v. State*, 245 Ga. App. 165, 167 (3) (537 SE2d 446) (2000) ("A

2. Spikes next argues that there was a fatal variance between the allegations in the indictment as to when the robbery occurred and the proof at trial. He contends that the date is a material element of the charge against him because he asserted an alibi defense. The indictment charged that the robbery occurred between September 3 and September 6, 1998, while Spikes asserts that the evidence showed the events must have occurred in August 1998. He bases this assertion on his own testimony that his contact with Pitts and Powell occurred the day he picked up his August workers' compensation and Social Security checks.

Spikes' testimony notwithstanding, Powell testified that the events at issue occurred in September 1998 and Pitts stated that they occurred the first week in September, although neither could pinpoint a specific day. But even without specific proof that the crime was committed between September 3-6, 1998, no fatal variance occurred. An alibi defense does not transform the date alleged in the indictment into a material element of the charge unless proof of a different date somehow bars the alibi. Rather, "[t]he evidence is sufficient if the State proves the offense occurred as of any date within the statute of limitation." (Footnote omitted.) *Lovelace v. State*, 241 Ga. App. 774, 775 (1) (527 SE2d 878) (2000).

Here, Spikes was not prevented from presenting evidence of his alibi simply because the state did not prove a specific date. Both sides presented evidence as to what occurred on the day of the crime, and, in fact, Spikes' evidence corroborated the state's evidence in many particulars. The fact that they disagreed as to whether these events occurred in August or September 1998 did not affect Spikes' ability to present his alibi evidence. And because both months fell well within the applicable limitation period, the state's evidence was sufficient to support the allegations of the indictment.

3. Spikes contends that a fatal variance also occurred between the proof and the indictment's allegation that Spikes took currency from Powell. He asserts that the evidence showed that Powell had no cash other than the money Spikes had paid him earlier that day and instead had only a government check.

This argument misstates both the language of the indictment and the evidence at trial. The indictment charged Spikes with taking "a *wallet* containing U. S. currency and personal identification from the immediate presence of Willie Powell. . . ." (Emphasis supplied.) The evidence showed that Spikes took Powell's wallet and that the wallet contained currency. On cross-examination, Powell stated that

motion for directed verdict is authorized only when there is no evidence to support a conviction.").

he had, in fact, cashed his government check and, therefore, the wallet held money when Spikes took it. And although Spikes points to a conflict in the evidence as to whether Powell used part of that money to pay for a refrigerator that day, this conflict did not create a variance between the allegations and the proof of the crime.

4. Spikes also argues that the trial court erred in instructing the jury regarding inculpatory statements because his statement to police was exculpatory. Although in his statement Spikes denied committing the crime, he did admit to a number of facts that corroborated the state's testimony and thus that could have been potentially incriminating. For example, he admitted going to Powell's house several times on the day in question and on one of those occasions he retrieved "change" from Powell. Thus, the jury could have found that at least portions of Spikes' statement were inculpatory: "Whether a statement intended to be exculpatory has an inculpatory effect depends upon the view that the jury might take of it in connection with all other facts and circumstances disclosed by the evidence." (Citation and punctuation omitted.) *Thomas v. State*, 176 Ga. App. 53, 56 (6) (335 SE2d 135) (1985). We find no error in the trial court's charge under these circumstances.

5. Spikes further asserts that the prosecutor made highly prejudicial and improper remarks in closing argument. But no objection was raised to any portion of the prosecutor's argument. And although Spikes contends that his counsel failed to object because the prosecutor's argument was partially inaudible, there is no support for this contention in the record. Nor did Spikes' counsel object on the ground that he could not hear the prosecutor. "It is necessary to object to [any] alleged irregularity in an attorney's closing argument at the time it is actually made, and failure to do so amounts to a waiver of any objection that might have been raised." (Citations and punctuation omitted.) *Sutton v. State*, 245 Ga. App. 881, 883 (3) (539 SE2d 227) (2000). Accordingly, this argument is waived.

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED FEBRUARY 7, 2001.

*Lawton Miller, Jr.*, for appellant.
*Fredric D. Bright, District Attorney, Gregory L. Bushway, Assistant District Attorney*, for appellee.