## A03A1759. WILT v. THE STATE.
(592 SE2d 925)

JOHNSON, Presiding Judge.

Kevin Leroy Wilt was convicted of five counts of child molestation for offenses committed against his ex-girlfriend's ten-year-old daughter. On appeal, he claims the state failed to prove venue, the state failed to prove the offenses occurred on the dates alleged in the indictment, and the trial court erred in refusing to allow the introduction of evidence that the victim also accused her father of molesting her. None of the enumerations has merit, so we affirm the convictions.

The evidence, viewed in a light most favorable to the verdict,[1] shows that Wilt dated and lived with the child's mother and her children for five years. About one or two years after the relationship between the mother and Wilt ended, Wilt began dating the child's maternal aunt, Tammy Burnett. Wilt moved into Burnett's trailer in March 2000. The child and her brother began spending weekends at Burnett's trailer.

The child is mentally disabled and, though she was in the fourth grade at the time of trial, was functioning on a kindergarten level. In a videotaped interview, the child told a Department of Family and Children Services caseworker and police detective that on one occasion, she had a headache and went into Burnett's bedroom to lie down. The child's aunt was at work, and Wilt came into the bedroom. Wilt removed his clothes, then fondled the child's breasts, vaginal

---

[1] *Curles v. State*, 276 Ga. 237 (575 SE2d 891) (2003).

area, and buttocks. Wilt "pinched" her buttocks and vaginal area. At the end of the videotape, when asked if anyone else ever touched her "on any of these places besides Kevin [Wilt]," the child remarked, "My daddy." The caseworker asked for her father's name. The child replied: "Ronnie." Although the videotape was played for the jury, the trial court did not permit this colloquy regarding the child's father to be played at trial.

The child's grandmother testified that the child told her a few days before trial that Wilt had touched her vaginal area with his finger. The grandmother asked: "Kevin? And [the child] said, no, I mean, Ronnie, you know, like she was totally confused. One minute it was Kevin. The next minute it was Ronnie, you know."

The child's mother was asked at trial if the child ever talked to her about the molestation allegations. The mother testified that "one minute she says he did it, and the next minute she says he didn't. I mean, she just — I'm not really sure she understands. And then she says it wasn't him, that it was her real dad."

At trial, the prosecutor asked the child if Wilt ever touched any part of her body that she did not want him to touch, and if she ever told anyone that he touched her "there" or on her chest area. She replied: "No." The prosecutor asked: "When you say no, do you mean he's never touched you at all, or you don't want to talk about it?" The child responded: "I don't want to talk about it." The child then testified that "Kevin [Wilt] didn't touch me; my daddy did." She then admitted that she told her mother, aunt, and grandmother that Wilt touched her inappropriately. The victim did recall having a bad headache and going into Burnett's bedroom to lie down.

At trial, Wilt denied molesting the child, but admitted that he lived in Burnett's residence between March 2000 and May 2002. He recalled that the child would sometimes get headaches, that he would bring her Tylenol, and that she would lie down. He said there was at least one occasion when the child lay on his bed because her head hurt. Wilt also testified that the child told him that her father molested her, although the trial court sustained the state's objection to the testimony based on relevance.

1. Wilt contends the convictions should be reversed because the state failed to prove beyond a reasonable doubt that the offenses occurred in Bartow County, as alleged in the indictment. He argues that the victim did not give sufficient information in her videotaped interview or her trial testimony to prove the county in which the incidents allegedly occurred. This enumeration is without merit.

In general, criminal actions are to be tried in the county where

the crimes are alleged to have occurred.[2] The state may establish venue by whatever means of proof are available to it, and may use both direct and circumstantial evidence.[3] It must prove venue beyond a reasonable doubt.[4] The state met that burden.

In this case, an investigator with the Bartow County Sheriff's Office testified that he went to the residence where the victim said the offenses occurred. The investigator added that the residence was located at 40 Saddle Club Drive, Cartersville, Georgia, in Bartow County. The victim's mother testified that from the time she learned that Wilt and her sister were dating (in July 2001), through the time the victim reported the crimes (in May 2002), Wilt lived with Burnett at the Saddle Club Drive address. The mother testified that Wilt and Burnett lived nowhere else during that period.

Wilt testified that he lived at the Saddle Club Drive address from March 2000 through May 2002. The victim told the investigator that Wilt did not molest her when he lived with her mother, that the offenses were committed on only one occasion, and that they occurred in Burnett's bedroom. Thus, the evidence showed that the offenses only occurred at 40 Saddle Club Drive, and that that address was located in Bartow County. The evidence, viewed in a light most favorable to the verdict, was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crimes occurred in Bartow County.[5]

2. Wilt argues that the trial court erred in denying his motion for a directed verdict of acquittal because a fatal variance existed between the allegations in the indictment and the evidence presented at trial. Specifically, he urges that the state did not offer any evidence to establish when the offenses were committed, though the indictment alleged that the offenses were committed between May 3, 2002, and May 6, 2002.

The general rule is that when the exact date of a crime is not a material allegation of the indictment, the crime may be proved to have taken place on any date prior to the return of the indictment, so long as the date is within the applicable statute of limitation.[6] Here, the victim told the investigator that Wilt never molested her when he lived in her home, and that the molestation occurred in Burnett's bedroom. Her mother testified that the child visited Wilt and Burnett at Burnett's residence from about July 13, 2001, through May 2002. Wilt testified that if anything happened in the Saddle Club Drive

---

[2] OCGA § 17-2-2 (a).

[3] *Downs v. State*, 257 Ga. App. 696, 697-698 (1) (572 SE2d 54) (2002).

[4] Id.

[5] See *Casey v. State*, 231 Ga. App. 701, 702 (500 SE2d 613) (1998).

[6] *Holder v. State*, 242 Ga. App. 479-480 (1) (529 SE2d 907) (2000).

residence, it would have been between March 2000 and May 2002. He recalled an incident in which the victim had a headache and was in the bedroom with him; he believed this was in January or February. Based on Wilt's testimony, this would have been January or February of 2001 or 2002.

In this case, the exact date of the crimes at issue was not a material part of the indictment because an exact date was not an essential element of any of the charged offenses, and because Wilt offered no defense, such as alibi, that might make the dates of the offenses material.[7] In fact, we note that Wilt conceded at trial that the dates were not material. The victim was unable to give specific dates, but approximate dates can be determined based on the evidence the state did present. The dates proved at trial were prior to the return of the indictment and were within the applicable seven-year statute of limitation period. Accordingly, the evidence was sufficient to support the allegations of the indictment.[8] The trial court did not err in denying Wilt's motion for a directed verdict of acquittal based on the state's alleged failure to prove when the offenses were committed.

3. Wilt contends the trial court erred in excluding the portion of the victim's videotaped interview in which she claimed that her father also molested her. According to Wilt, the evidence was relevant to show that someone else could have committed the offenses for which he was charged, and to show that the child might have been confused as to which of the two men committed the alleged offenses. There was no error.

Evidence of a prior unrelated molestation is generally not admissible.[9] Such evidence may be permitted to show that someone other than the defendant caused the child's injuries; to show lack of victim credibility if the victim's prior allegations of molestation were false; and to show other possible causes for the child's symptoms.[10] The victim in this case exhibited no physical or psychological injuries or symptoms which would warrant the admission of proof that they were caused by someone other than Wilt. And there was no evidence that any prior allegations were false. Evidence of unrelated molestation is not admissible simply to show the victim was confused.[11]

The interviewer's question regarding whether *anyone else besides Wilt ever touched her* inappropriately clearly concerned prior unrelated acts of molestation and, contrary to Wilt's contention, did not relate to the issue of the identity of the person responsible for the

---

[7] See *Lloyd v. State*, 263 Ga. App. 234, 235 (1) (587 SE2d 372) (2003).

[8] See *Spikes v. State*, 247 Ga. App. 874, 875 (2) (545 SE2d 410) (2001).

[9] See *Blackwell v. State*, 229 Ga. App. 452, 454 (2) (494 SE2d 269) (1997).

[10] *Williams v. State*, 236 Ga. App. 667 (1) (512 SE2d 363) (1999).

[11] See *Blackwell*, supra at 454 (2).

offenses with which Wilt was charged. Under the circumstances, we cannot say the trial court abused its discretion in excluding the evidence.[12]

In any event, we note that the jury did hear evidence that the child had accused her father of committing the charged acts. At trial, the victim denied that Wilt molested her, stating that it was her father who committed the offenses. Her mother testified that the child had accused Wilt of molesting her and then said it was not Wilt but her father who committed the crimes. And the victim's grandmother testified that the child initially told her that Wilt molested her, then said she meant to say her father committed the offenses. In light of the witnesses' testimony directly implicating the child's father in the charged offenses, we are not persuaded that the exclusion of the videotaped inquiry into whether *anyone else ever touched her besides Wilt* harmed Wilt in any way. Wilt has shown no harm, so reversal is not required.[13]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED JANUARY 14, 2004.

*Ann C. Stahl, Janice V. Dorris,* for appellant.

*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney,* for appellee.

---

[12] See id.; *Johns v. State,* 253 Ga. App. 207, 209 (3) (558 SE2d 426) (2002).

[13] See generally *Hurston v. State,* 194 Ga. App. 226, 227 (390 SE2d 119) (1990).