## S10A1563. ADAMS v. THE STATE.

(707 SE2d 359)

CARLEY, Presiding Justice.

On June 12, 2008, Mitchell Lee Adams was indicted for child molestation and aggravated child molestation occurring on and between May 1, 2007 and March 10, 2008, "the State being unable to narrow the range of dates or charge a specific date as the crime occurred during the period of time charged and the victim is a young child unable to state a specific date . . . ." Prior to trial, the trial court denied a challenge by Adams to the constitutionality of the mandatory minimum sentence for aggravated child molestation provided in the 2006 amendment to OCGA § 16-6-4 (d) (1) as applied to him. During a jury trial, Adams moved for a directed verdict, arguing that the State failed to prove that the crimes occurred during the period of time set forth in the indictment. The trial court ruled that the dates alleged in the indictment were not essential averments, and subsequently instructed the jury that any of the charged offenses could be proven as of any time within the applicable seven-year

statute of limitations.

Adams was found guilty of both offenses with which he was charged. Several months later, the trial court entered judgments of conviction on the guilty verdicts and sentenced Adams to life imprisonment for aggravated child molestation, with 25 years to be served and the remainder of the life sentence on probation, and to a 20-year term for child molestation, with five years to be served and the remainder on probation. Adams appealed to the Court of Appeals. Because the constitutionality of the current version of OCGA § 16-6-4 (d) (1) is raised on appeal and has not yet been considered by this Court, the Court of Appeals transferred the case to this Court pursuant to our exclusive jurisdiction over "all cases in which the constitutionality of a law . . . has been drawn in question . . . ." See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1).

1. On the day that Adams was sentenced, he filed a motion to dismiss the indictment or, in the alternative, for directed verdict, which the trial court orally denied. In that motion, he asserted for the first time that, as a result of the trial court's ruling that the alleged dates were not essential averments, the indictment permitted prosecution for offenses occurring prior to his thirteenth birthday on August 4, 2005, and that the State failed to prove that the crimes did not occur before that date. Adams contends on appeal that the time period for which he was convicted includes a period in which, because of his age, he could not be found criminally responsible.

"A person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime." OCGA § 16-3-1. Under prior law, a person under the age of ten years was incapable of committing any criminal offense. *Ford v. State*, 100 Ga. 63 (1) (25 SE 845) (1896). Such a child was "conclusively presumed not to be possessed of sufficient capacity to commit crime. [Cit.]" *Curry v. State*, 87 Ga. App. 451, 452 (1) (74 SE2d 249) (1953). However, with the enactment of OCGA § 16-3-1 in 1968, the General Assembly "eliminate[d] the conclusive presumption of incapacity to commit crime below the age of 10 years . . . and lower[ed] the rebuttable presumption of capacity to commit crime from 14 years to 13 years." Committee Notes to § 26-701 of the 1968 Criminal Code.

OCGA § 16-3-1 "does not provide that a person under 13 years of age is *incapable* of performing an act which is designated a crime under the laws of Georgia . . . ." (Emphasis in original.) *K. M. S. v. State of Ga.*, 129 Ga. App. 683, 685 (200 SE2d 916) (1973) (citing the Committee Notes). It provides neither a constitutional nor an unwaivable proscription on the prosecution of persons under 13 years old. Compare *Roper v. Simmons*, 543 U. S. 551 (125 SC 1183,

161 LE2d 1) (2005) (relied upon by the special concurrence, but providing a constitutional and categorical proscription on the execution of minors). OCGA § 16-3-1 should not be confused with OCGA § 51-11-6, which this Court has construed to provide "immunity" from a tort action. *Barrett v. Carter*, 248 Ga. 389 (1) (283 SE2d 609) (1981). There is no authority that OCGA § 16-3-1 provides immunity from criminal prosecution. To the contrary, that statute " 'simply raises a defense for (children under 13) because of the social desirability of protecting those no more than 12 years of age from the consequences of criminal guilt.' [Cit.]" *Luke v. State*, 222 Ga. App. 203, 205 (1) (b) (474 SE2d 49) (1996), overruled on other grounds, *Brewer v. State*, 271 Ga. 605, 607 (523 SE2d 18) (1999). See also *K. M. S. v. State of Ga.*, supra (taking this language from the Committee Notes).

Indeed, OCGA § 16-3-1 sets forth an affirmative defense, because such a defense admits the doing of the act charged, but seeks to justify, excuse, or mitigate it. *Chandle v. State*, 230 Ga. 574, 576 (3) (198 SE2d 289) (1973); *Agnor's Ga. Evidence* § 17:7, fn. 9 (4th ed.). The definition of "affirmative defenses" cannot be limited to those which preclude criminal intent, by relying on authority which deals only with those affirmative defenses which are specifically identified as such and listed in OCGA §§ 16-3-20 through 16-3-28. *Hicks v. State*, 287 Ga. 260, 261-262 (2) (695 SE2d 195) (2010); *Brower v. State*, 298 Ga. App. 699, 702 (1) (680 SE2d 859) (2009) (quoted in *Hicks*). Other defenses, including age and the statute of limitations, do not preclude criminal intent, "are listed in other statutes and may be considered affirmative defenses as well. [Cits.]" *Agnor's*, supra. See also *Moss v. State*, 220 Ga. App. 150 (469 SE2d 325) (1996) (limitations); Gregory C. Lisby, *Resolving the Hazelwood Conundrum: The First Amendment Rights of College Students in Kincaid v. Gibson and Beyond*, 7 Comm. L. & Pol'y 129, 131, fn. 13 (2002) ("Infancy . . . has long been a widely accepted affirmative defense in . . . criminal law. [Cits.]"). With respect to any affirmative defense, "unless the state's evidence raises the issue invoking the alleged defense, the defendant must present evidence thereon to raise the issue." OCGA § 16-1-3 (1).

> " 'The responsibility of producing evidence of an affirmative defense and the burden of persuasion by proof beyond a reasonable doubt are two distinct and separate concepts. The first is placed squarely on the defendant unless the state's evidence raised the issue.' (Cits.)" [Cits.]

*Cheesman v. State*, 230 Ga. App. 525, 528 (6) (497 SE2d 40) (1998). Thus, contrary to the special concurrence, even if pre-trial docu-

ments which were never admitted into evidence refer to Adams' date of birth, some evidence of his age at the time of the crimes nevertheless had to be presented at the trial both to raise the issue in OCGA § 16-3-1 and to supply proof regarding that affirmative defense. However, "[t]here was no evidence at the trial showing the age of the accused . . . ." *Broadnax v. State*, 100 Ga. 62 (25 SE 844) (1896). Adams' appellate brief cites pre-trial record references to his date of birth, but not any testimony or other evidence thereof in the transcript, and our own review has located no such evidence. Therefore, Adams "has not shown that either he or the State raised the issue as to [his age at the time] of the crimes." *Cheesman v. State*, supra at 529 (6).

Adams could perhaps have moved for a new trial based upon newly discovered evidence. See *Ford v. State*, supra at 64; *Broadnax v. State*, supra. But see *Clemmons v. State*, 66 Ga. App. 16, 18-20 (3) (16 SE2d 883) (1941) (motion for new trial not sufficient to raise question of age because former statute provided only a rebuttable presumption that the 13-year-old defendant was incapable of committing a crime). However, the requirements of such a motion were not met by the only post-verdict motion which Adams did file. That motion did not include any evidence of Adams' date of birth or account for its absence, and the record shows that, prior to trial, Adams and his attorney already believed that Adams' date of birth was August 4, 1992. See *Hester v. State*, 282 Ga. 239, 241-242 (3) (647 SE2d 60) (2007); *Timberlake v. State*, 246 Ga. 488, 491 (1) (271 SE2d 792) (1980); *Broadnax v. State*, supra; *Hester v. State*, 219 Ga. App. 256, 257 (1) (465 SE2d 288) (1995). Compare *Ford v. State*, supra (affidavits presented newly discovered evidence that defendant was under ten years old and therefore incapable of committing any criminal offense under former statute).

Neither an allegation nor proof of Adams' age was necessary to show his capacity for committing the crimes charged. *Clardy v. State*, 87 Ga. App. 633, 638 (2) (75 SE2d 208) (1953). Construed most strongly in support of the verdicts, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Adams was guilty of the crimes of child molestation and aggravated child molestation as charged in the indictment.

2. Adams further contends that the trial court erred in denying the motion for directed verdict which defense counsel made during trial on the ground that the State failed to prove that the offenses occurred within the dates alleged in the indictment.

Where, as here, the State alleges a certain range of dates in an indictment and does not specifically allege that those dates are material, the State is not restricted at trial to proving that the crimes occurred within that range of dates. *State v. Layman*, 279 Ga. 340,

341 (613 SE2d 639) (2005). "And, if there is a variation between the date alleged and the date proved at trial, the variance does not entitle a defendant to a new trial unless it prejudiced the defense. [Cits.]" *State v. Layman*, supra. Adams

"offered no alibi evidence, nor did he at any time request a continuance on the ground of surprise, nor did he otherwise express a need for additional time to rebut any evidence presented by the state. Consequently, it does not appear that the failure to allege the specific date of the offense in the indictment materially affected his ability to present a defense. . . ." [Cit.]

*Hutton v. State*, 192 Ga. App. 239, 241 (4) (384 SE2d 446) (1989).

The victim was unable to give specific dates, but approximate dates can be determined based on the evidence the state did present. The dates proved at trial were prior to the return of the indictment and were within the applicable seven-year statute of limitation period. Accordingly, the evidence was sufficient to support the allegations of the indictment. [Cit.] The trial court did not err in denying [Adams'] motion for a directed verdict of acquittal based on the state's alleged failure to prove when the offenses were committed.

*Wilt v. State*, 265 Ga. App. 158, 161 (2) (592 SE2d 925) (2004).

3. Prior to trial, Adams filed a motion to transfer the case to juvenile court pursuant to OCGA § 15-11-28 (b) (2) (B). In pertinent part, that statutory subsection provides the following:

After indictment, the superior court may after investigation and for extraordinary cause transfer any case involving a child 13 to 17 years of age alleged to have committed any offense enumerated in subparagraph (A) of this paragraph which is not punishable by loss of life, imprisonment for life without possibility of parole, or confinement for life in a penal institution.

Although aggravated child molestation is an offense enumerated in subparagraph (A), the applicable sentencing statute was amended, effective July 1, 2006, so as to provide for mandatory punishment "by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life . . . ." OCGA § 16-6-4 (d) (1).

On this basis, the trial court denied the motion to transfer, finding that OCGA § 15-11-28 (b) (2) (B) is inapplicable and that the court was neither authorized nor obligated to conduct an investigation to determine whether there is extraordinary cause.

Adams enumerates this ruling as error on appeal, arguing that, because of the seven-year statute of limitations and the trial court's rulings and instructions, the offense of aggravated child molestation could have occurred prior to July 1, 2006, when that offense was not yet punishable by life imprisonment and instead was to "be punished by imprisonment for not less than ten nor more than 30 years." Ga. L. 1997, pp. 1578, 1579, § 1 (former OCGA § 16-6-4 (d) (1)). Indeed, aggravated child molestation clearly was a transferable offense under OCGA § 15-11-28 (b) (2) (B) prior to the 2006 amendment of OCGA § 16-6-4 (d) (1). *State v. Ware*, 258 Ga. App. 564, 565 (574 SE2d 632) (2002). However, we have held that

> the superior court is not divested of jurisdiction merely because some, but not all, evidence of criminal acts is beyond the scope of the superior court's jurisdiction, so long as that evidence stems from the same criminal transaction which vests the superior court with jurisdiction. [Cit.]

*Reynolds v. State*, 266 Ga. 235, 237 (2) (466 SE2d 218) (1996). See also *Seabolt v. State*, 279 Ga. 518, 519 (1) (616 SE2d 448) (2005). Although the evidence in this case does not show the precise age of the victim, it is clear that she was very young. In a forensic interview in March of 2008, she stated that she was four, remembered the molestation in some detail, and stated that the molestation occurred in her father's house. Her parents' divorce was not final until May 2007. Because the indictment alleged and the evidence at trial authorized a finding that Adams committed aggravated child molestation on some date after July 1, 2006, we hold that the trial court could not be divested of jurisdiction pursuant to OCGA § 15-11-28 (b) (2) (B). See *McGruder v. State*, 279 Ga. App. 851, 852 (1) (632 SE2d 730) (2006). Therefore, the trial court correctly denied the motion to transfer the case to juvenile court.

4. Adams contends that the sentence provided in the amendment to OCGA § 16-6-4 (d) (1) constitutes cruel and unusual punishment as applied to him. As a result of OCGA § 17-10-6.1 (b), that sentence is 25 years, "followed by life on probation, with no possibility of probation or parole for the minimum prison time of 25 years. [Cits.]" *Humphrey v. Wilson*, 282 Ga. 520, 529 (3) (c) (652 SE2d 501) (2007).

Both parties address precedent involving the punishment of a juvenile by life imprisonment without parole. During the pendency of this appeal, the Supreme Court of the United States held that the

Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." *Graham v. Florida,* ___ U. S. ___, ___ (III) (D) (130 SC 2011, 176 LE2d 825) (2010). The Supreme Court emphasized that "[t]he Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life." *Graham v. Florida,* supra at ___ (III) (B). Instead, that amendment requires that the juvenile be given at least a realistic opportunity to obtain release before the end of his life. *Graham v. Florida,* supra at ___ (III) (B), ___ (III) (D). It "forbid[s] States from making the judgment at the outset that those offenders never will be fit to reenter society." *Graham v. Florida,* supra at ___ (III) (B). Clearly, "[n]othing in the Court's opinion affects the imposition of a sentence to a term of years without the possibility of parole." *Graham v. Florida,* supra at ___ (Alito, J., dissenting). Outside the context of the death penalty, of extreme cases such as life imprisonment as punishment for overtime parking, and now of life without parole for a juvenile convicted of non-homicide crimes, successful challenges to the proportionality of legislatively mandated terms of imprisonment should be "exceedingly rare." *Ewing v. California,* 538 U. S. 11, 21-22 (II) (A) (123 SC 1179, 155 LE2d 108) (2003).

Where, as here, no categorical Eighth Amendment restriction applies, we must in the following manner

> determin[e] whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime. A court must begin by comparing the gravity of the offense and the severity of the sentence. [Cit.] "(I)n the rare case in which (this) threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.

*Graham v. Florida,* supra at ___ (II). We have "emphasize[d] that it is the 'rare case( )' in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny. [Cit.]" *Humphrey v. Wilson,* supra at 532 (3) (g) (a rare case because of the legislative sea change in the punishment for consensual teenage oral sex).

> "(A) sentence which is not otherwise cruel and unusual does not become so simply because it is 'mandatory.' (Cit.)" [Cit.] "Legislative enactments constitute the clearest and

most objective evidence of how contemporary society views a particular punishment. (Cit.) As a result, the issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience. (Cit.)"

*Widner v. State*, 280 Ga. 675, 676 (1) (631 SE2d 675) (2006).

The aggravated child molestation committed by Adams "was not a passive felony. [Cit.]" *Bragg v. State*, 296 Ga. App. 422, 426 (674 SE2d 650) (2009). The evidence showed that, during one of numerous acts of child molestation, Adams placed his penis to the young victim's mouth, ejaculated, and made her lick the semen off his penis. Under these circumstances, Adams' 25-year sentence does not raise a threshold inference of gross disproportionality.

"Juveniles have been tried as adults and sentenced to long periods of incarceration in Georgia. [Cits.] Nor is the legislative decision to impose adult sanctions on youthful offenders peculiar to Georgia. [Cits.]" *Johnson v. State*, 276 Ga. 57, 62 (5) (573 SE2d 362) (2002) (where the 14-year-old defendant received three concurrent mandatory minimum sentences of 10 years each for inserting his finger into and putting his tongue on the six-year-old victim's sex organ). "Similarly severe punishments for crimes against children have withstood previous attacks on constitutional grounds. [Cits.]" *State v. Ross*, 804 P2d 112, 115 (II) (Ariz. App. 1990) (where the 14-year-old defendant was sentenced to 25 years without the possibility of parole for sexual assault on a 14-year-old girl).

5. The videotaped statement of the victim was admitted pursuant to the child hearsay statute found in OCGA § 24-3-16. Adams asserts that the statement was not properly admitted, because the trial court failed to make the findings of reliability required by that statute. However, the trial court actually did make a finding that there were sufficient indicia of reliability. Moreover, an express finding in that regard is not necessary, as the statutory requirement is met where, as here, " 'after both parties have rested, the record contains evidence which would support such a finding.' [Cit.]" *Romani v. State*, 303 Ga. App. 829, 830 (1) (695 SE2d 303) (2010).

Adams also claims that admission of the videotaped statement violated the Confrontation Clause under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004) and its progeny. However, Adams provides no citation in the record to any objection on that basis, and we have found none. "He has thus waived [this] objection[ ] on appeal. [Cit.]" *Sheppard v. State*, 294 Ga. App. 270, 272 (2) (669 SE2d 152) (2008). See also *Melendez-Diaz v. Massachusetts*, ___ U. S. ___, ___ (III) (A), fn. 3 (129 SC 2527, 174 LE2d 314) (2009). Furthermore, the trial court did not make any ruling on this

issue. *Verdree v. State*, 299 Ga. App. 673, 679 (3) (b) (683 SE2d 632) (2009).

*Judgments affirmed. All the Justices concur, except Hunstein, C. J., and Melton, J., who concur specially.*

HUNSTEIN, Chief Justice, concurring specially.

I write specially because I disagree with the majority's holding in Division 1 that accuseds who were under the age of 13 when their alleged crimes were committed must raise their age as an "affirmative defense" in order to obtain the protection accorded such children by OCGA § 16-3-1. Pursuant to that statute, "[a] person shall not be considered or found guilty of a crime unless he has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime." This statute preserved the language in former Ga. Code Ann. § 26-302 and "is intended to have the same effect. That is, one under the prescribed age is not to be prosecuted as a criminal, although he may be dealt with as the law provides for juveniles who violate the law." Committee Notes to § 26-701 of the 1968 Criminal Code. I would recognize that the Legislature with the enactment of this statutory language has determined that no child under the age of 13 who commits a criminal offense may be accused of, i.e., "considered," or found guilty of committing that crime. Once the date of birth is established so as to place a child within the ambit of OCGA § 16-3-1, allowing that child to "waive" that legal bar would utterly thwart the Legislature's purpose of protecting such a child from ever being considered or found guilty of a crime.

OCGA § 16-3-1 by its plain language establishes that children who commit criminal offenses at the time they are under the age of 13 are categorically ineligible to be prosecuted for or convicted of those offenses. The statute thus operates in the same manner as the United States Supreme Court's holding in *Roper v. Simmons*, 543 U. S. 551 (125 SC 1183, 161 LE2d 1) (2005), which categorically prohibits the execution of an accused who was under the age of 18 when he committed a capital offense. I would hold that a child under the age of 13 who commits a criminal offense is no more able to "waive" the legal bar to prosecution set forth in OCGA § 16-3-1 than a defendant who commits a capital offense when under the age of 18 can "waive" the constitutional proscription against the execution of a death sentence. However, under the majority's rationale concluding that the categorical prohibition in OCGA § 16-3-1 is nothing more than an "affirmative defense," it follows that a waiver by a child who does not raise the effect of his or her age on a criminal prosecution under OCGA § 16-3-1 or, similarly, its effect on the imposition of a death sentence under *Roper*, would authorize the State to prosecute and convict a child of

crimes committed while under 13 years of age and to execute a child found guilty of a capital felony committed when under 18 years of age. This result is unwarranted. Accordingly, I cannot agree with the majority's holding because it deprives every child in this State of the protection from prosecution and conviction that the Legislature in its wisdom accorded such children in OCGA § 16-3-1[1] should that child fail or choose not to raise his age as a defense, even in situations where, like here, the State knows that the child's age may place him within the law's protection.

In this case, appellant's indictment charged him with committing child molestation and aggravated child molestation occurring on and between May 1, 2007 and March 20, 2008. However, because the State did not specifically allege that those dates were material, appellant was subject to being prosecuted and found guilty of the charged crimes within the applicable seven-year statute of limitation. The record in this case establishes that appellant was born on August 4, 1992,[2] such that the alleged offenses technically could have occurred at a time when appellant was legally barred from being considered or found guilty of the charged crimes, i.e., before appellant attained the age of 13 on August 4, 2005.

I concur in the majority's holding not because it is correct regarding the legal application of OCGA § 16-3-1 to this case but because my review of the evidence adduced at trial establishes that there is no possibility the jury convicted appellant of the charged offenses based upon any acts committed when appellant was under the age of 13. The victim's mother testified at trial that the victim first related information to her about the molestation on March 9, 2008. Although the State curiously failed to introduce any evidence regarding the victim's precise age,[3] the victim said she was four years old during a recorded forensic interview that was conducted on March 14, 2008. Thus, for the molestation to have occurred before appellant reached the age of criminal responsibility in August 2005, it would have had to occur when the victim was, at best, approxi-

---

[1] By logical extension, the majority's rationale also presents the potential of authorizing the State in violation of *Roper*, supra, to use the child's "waiver" as the reason to execute a child under the age of 18 at the time he committed a capital offense.

[2] A review of the record in this case — from the affidavit submitted to the magistrate court to obtain the arrest warrant to the superior court's production orders to the youth detention center to release appellant for trial — is replete with notations identifying appellant by his birth date. I thus disagree with the majority that any fact question exists in this case regarding when appellant was born. There is no issue whether the State put the incorrect date of birth on appellant's arrest warrant or whether the inmate production orders to the youth detention center identified a different "Mitchell Adams" with the "DOB: 08/04/1992."

[3] The prosecutor in opening stated that the victim was four years old "[w]hen this happened" but was "currently five" at the time of the January 2009 trial.

mately two years old.[4] No reasonable juror could have found that this particular victim, even if she were capable at two years of age of understanding the acts of molestation that appellant was charged with perpetrating on her, somehow remembered those acts and yet waited over 30 months before making the statements that alerted her mother[5] and then detailing the molestation in the present tense manner shown by the recorded forensic interview viewed by the jury.

Accordingly, I concur for evidentiary reasons only in the majority's holding. I also take the opportunity to caution prosecutors that where, as here, the potential exists that an accused was under the age of 13 within the statute of limitation applicable to the commission of a charged criminal offense, the indictment should be drafted carefully to avoid *any* possibility of the jury considering or finding the accused guilty before he or she has attained the age of 13 years at the time of the act, omission, or negligence constituting the crime. OCGA § 16-3-1.

I am authorized to state that Justice Melton joins in this special concurrence.

DECIDED FEBRUARY 7, 2011 —
RECONSIDERATION DENIED MARCH 7, 2011.

*Rafe Banks III, Daisy D. Weeks,* for appellant.
*Lee Darragh, District Attorney, Theodore G. Cassert, Assistant District Attorney,* for appellee.

---

[4] This assumes that the victim was just shy of her fifth birthday at the time of the forensic interview.

[5] The victim complained on March 9, 2008 about experiencing pain when the mother sought to bathe her.