**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0491. BECKETT v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, Demond Beckett appeals from his conviction in Clarke County of felony fleeing or attempting to elude an officer.[1] He contends that the evidence was insufficient. Because the record shows that the pursuing officer's testimony did not support a felony fleeing charge, we reverse.[2]

Construed in favor of the verdict,[3] the evidence shows that Beckett and Stancil were in and out of a "toxic" relationship, and after an argument on October 12, 2020,

---

[1] See OCGA § 40-6-395 (b) (5) (A) (iii) (2020). This version of the Code applies to alleged conduct occurring in 2020.

[2] Beckett also enumerates six other errors, but they are moot.

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

Beckett was driving a white Kia Soul obtained from an acquaintance, and he pursued Stancil in it after he encountered her driving her Toyota 4Runner.[4] What followed was a chase through the streets of Athens, Georgia, during which Stancil called 911 and reported the pursuit as it happened. Eventually, an officer on patrol spotted the two vehicles. He initially observed the two vehicles run a red light at "MLK" and Broad Street, and he entered the road to follow them as they drove "erratically." During this time, the Toyota was "kind of in the middle of the road," and the Kia "had kind of gone up on the end inside and . . . that's where contact had been made" between the two vehicles. As he activated his emergency lights and gave commands to stop over the loudspeaker, the drivers did not immediately pull over, but they slowed and "started obeying traffic [rules] and staying sort of in their lanes." Shortly thereafter, the Toyota turned into a restaurant parking lot and stopped while the Kia continued on, turned at an intersection, and did not stop. In the parking lot, Stancil spoke to officers about the events, identified Beckett as the driver of the Kia, and police were able to locate the owner of the Kia (but not Beckett) soon thereafter.

---

[4] There was testimony that Beckett stole the Kia, but the jury acquitted him on that count.

About a week later, on October 20, 2020, police arrested Beckett when he got into an altercation with Stancil at a hospital after he had been evaluated for unrelated health issues. He was identified as the driver of the Kia and ultimately charged with family violence aggravated assault against Stancil for ramming her vehicle (Count 1), making terroristic threats against Stancil (Count 2), felony fleeing or attempting to elude a police officer (Count 3), theft by taking the Kia from its owner (Count 4), and hit and run (Count 5). Following a jury trial, the trial court granted a directed verdict of acquittal on Count 2, and the jury found Beckett guilty of felony fleeing or attempting to elude an officer, acquitting him of the remaining counts. This appeal followed.

1. Beckett contends that the evidence was insufficient to support the guilty verdict as to felony fleeing or attempting to elude a police officer. We agree.

As a threshold matter,

> [o]n appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and

---

[5] 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) ("[T]he relevant question [on appeal] is whether, after viewing the evidence in the light most

does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[6]

Even with this deferential view of the evidence, the record does not support a finding that Beckett fled the officer in the felonious manner alleged in the indictment.

In relevant part, OCGA § 40-6-395 (a) and (b) (5) (A) (2020) define the felony offense of fleeing an officer as follows:

(a) It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer *when given a visual or an audible signal to bring the vehicle to a stop.* . . .

(b) (5) (A) Any person violating the provisions of subsection (a) of this Code section who, while fleeing or attempting to elude a pursuing police vehicle or police officer: . . . (iii) *Flees in traffic conditions which place*

---

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original).

[6] (Citations omitted; emphasis supplied.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

*the general public at risk of receiving serious injuries;*[7] *. . .* shall be guilty of a felony. . . .

Thus, the felony fleeing offense is, by definition, dangerous driving conduct that occurs *after being signaled to stop.*

The allegations in the indictment track this language,[8] alleging in relevant part that:

> [Beckett] did willfully fail and refuse to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police officer, *while fleeing in traffic conditions, to wit: driving into the oncoming lane of traffic on Poplar Street and running a red light at the intersection of Poplar and Oak Street, actions which place the general public at risk of receiving serious injuries*, after having been given a visual signal to bring the accused's vehicle to a stop

---

[7] (Emphasis supplied.)

[8] The Code section provides for multiple ways to commit the felony version of fleeing, but the indictment's language controls the State's burden of proof because "averments in an indictment as to the specific manner in which a crime was committed are not mere surplusage, and such averments must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law." (Punctuation omitted.) *Butler v. State*, 352 Ga. App. 579, 583 (835 SE2d 389) (2019).

5

by [a uniformed officer in a marked police vehicle] in violation of OCGA § 40-6-395 (c).[9]

Based on this, the State had a burden to prove that Becket, *after being signaled to stop*, (a) drove into oncoming traffic on Poplar Street, and (b) ran the light at Poplar and Oak Streets.[10] Here, the officer who pursued Beckett initially described the vehicles driving recklessly, but he did not describe the indicted conduct as occurring after he initiated his blue lights:

---

[9] (Emphasis supplied.) We note that the Code section was amended in 2022, moving this language from subsection (b) to (c) but not affecting the substance of the relevant language. Beckett does not challenge the discrepancy on appeal.

[10] See generally *Roberson v. State*, 187 Ga. App. 485, 487 (370 SE2d 661) (1988) ("[N]o averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance. To permit the prosecution to prove that a crime was committed in a wholly different manner than that specifically alleged in the indictment would subject the accused to unfair surprise at trial and constitute a fatal variance.") (citations and punctuation omitted). We note that because the evidence failed to show the felony fleeing offense altogether, this is not a case involving an overly technical and improper application of the fatal variance rule. Compare *Fletcher v. State*, 326 Ga. App. 389, 392-393 (4) (b) (756 SE2d 625) (2014) (rejecting fatal variance argument because no material difference in allegation of indictment charging the defendant with using his hands to choke the victim and the proof presented at trial showing that he used his arms to choke her).

So[,] when we had gotten that [911] call, I was stopped at a light for Broad and I believe it was MLK. So I was stopped at that light. It was green on my end, red on the other end. They were traveling . . . *eastbound on MLK towards Poplar Street. I had seen two vehicles cross in front of me running the red light.* One was a white 4Runner; the other was a white Kia Soul. When I saw the vehicles, the Kia Soul had matched the description of the call, so I turned and started to follow them. [The v]ehicles were driving erratically. *The Soul appeared to try to run the 4Runner off the road as we were coming towards Mulberry[,] which came up to Poplar. I had initiated my blue lights. I was giving commands on the PA for them to pull over and to stop.* . . . [T]hen *we continued down Poplar with my lights initiated and my siren*, and then *basically her vehicle was kind of in the middle of the road. His vehicle had kind of gone up on the end inside[,] and I believe that's where contact had been made.* When she — when we came up to Mama's Boy [restaurant] *at Oak and Poplar*, she pulled over in the parking lot[,] and the *white Kia Soul turned right onto Oak Street* and continued westbound towards downtown. [There is no mention of a light at Oak and Poplar Streets.]

This testimony describes the Kia Soul (driven by Beckett): running a red light on MLK Street at Broad Street (before the blue lights were activated), attempting to run the 4Runner off the road "coming towards [but not yet on] Mulberry which came up to Poplar [i.e., not yet on Poplar]," and then, on Poplar, driving "up on the end inside" of the 4Runner "where contact had been made." It does not describe running

7

a red light at Poplar and Oak Streets after being signaled to stop, and it does not describe driving into oncoming traffic on Poplar Street after being signaled to stop.

Consistent with this, and most importantly, the officer further explained that the two vehicles were driving recklessly only during the initial portion of the events, but he clarified that he waited to turn on his blue lights until they "came around Mulberry" (which runs between MLK and Poplar). When he did so *both cars "started obeying traffic [rules] and staying sort of in their lanes . . . both cars slowed down . . . started to brake*." This testimony is clear, and the officer did not equivocate on that point. The officer explained that he pulled behind the erratically driving cars on MLK but waited briefly to activate his emergency lights to "figure out if that was the vehicle they were looking for or if it was just a completely separate incident. Based on the way they were driving, it was more of a kind of a shock to the system. . . So[,] then when I pulled behind, I didn't want to initiate my lights immediately." Shortly after that, the 4Runner turned into Mama's Boy restaurant on the corner of Oak and Poplar and the Kia Soul "continue[d], c[ame] up to Oak and Poplar, and then turn[ed] right on Oak and Poplar."

In sum, the officer's testimony does not describe the conduct alleged in the indictment. The officer's testimony that, "when I initiated my lights, that's when they started obeying traffic and staying sort of in their lanes," does not support a finding that the Kia Soul drove into oncoming traffic on Poplar Street or ran a red light after the officer activated his lights. It supports the opposite inference.

The State's brief rebuts none of this. Instead, it refers to Exhibit 1 — a bodycam video depicting the officer's post-stop roadside conversation with Stancil — and asserts that the video supports the verdict, despite the fact that the video does not depict any of Beckett's driving. In light of the officer's testimony showing that the Kia Soul did not commit the fleeing offense alleged in the indictment,[11] we reverse the conviction of felony fleeing under OCGA § 40-6-395.[12]

---

[11] The evidence showed that Beckett committed the non-felony version of fleeing, which was not presented to the jury. OCGA § 40-6-395 (a) defines the non-felony version: "It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop."

[12] See *Butler*, 352 Ga. App. at 583; *Younger v. State*, 293 Ga. App. 20, 22 (666 SE2d 460) (2008) (evidence insufficient due to fatal variance: appellant charged with operating vehicle without license plate, but evidence showed only no license plate on towed trailer).

2. Beckett's remaining enumerations are moot.

*Judgment reversed. Hodges and Watkins, JJ., concur fully and specially.*

A24A0491.  BECKETT v. THE STATE.

HODGES, Judge, concurring fully and specially.

I concur fully with the majority's correct and well-written opinion. I agree that the evidence, as presented, "was insufficient to support the guilty verdict as to felony fleeing or attempting to elude a police officer." See OCGA § 40-6-395 (b) (5) (A) (iii) (2020); OCGA § 40-6-395 (c) (4) (2024).

I write separately to highlight my concerns with the State's failure to either properly include relevant potentially criminal conduct in the indictment (in particular, to allege that the contact between the 4-Runner and the Kia, seemingly in the middle

of the roadway and after the officer activated the blue lights on his patrol vehicle, occurred "in traffic conditions which place the general public at risk of receiving serious injuries[,]" see OCGA § 40-6-395 (b) (5) (A) (iii) (2020)) or to thoroughly clarify witnesses' testimony that the criminal conduct that *was* alleged in the indictment (namely, "driving into the oncoming lane of traffic on Poplar Street and running a red light at the intersection of Poplar and Oak Street") occurred *after* the officer activated his blue lights. The seven evidence-based questions submitted by the jury during its deliberations telegraphed, at least to some extent, its discomfort with the evidence presented.

Had greater care been exercised by the State in either the drafting of the indictment or the presentation of its evidence, the jury's discomfort may have been relieved. See generally *Adams v. State*, 288 Ga. 695, 705 (707 SE2d 359) (2011) (Hunstein, C. J., concurring specially) (cautioning prosecutors to exercise care in drafting charging instruments). Accordingly, with these concerns in mind, I concur fully with the majority opinion and urge representatives of the State to carefully draft charging instruments and to clearly and thoroughly present the State's evidence.

I am authorized to state that Judge Watkins joins in this special concurrence.

2