## S05A0380. SEABOLT v. THE STATE.
### (616 SE2d 448)

HINES, Justice.

Gary Seabolt ("Seabolt") appeals from the denial of his motion to withdraw his pleas of guilty to the malice murder of Gary Lane Dale, the armed robbery of a convenience store, violation of the Georgia Street Gang Terrorism and Prevention Act, and other crimes, and from the denial of his motion to set aside void judgments. For the reasons that follow, we affirm.[1]

Seabolt was indicted on various charges with Brandon Wayne Smith and Nathan Seabolt, who is Seabolt's brother. The indictment contained 30 counts; Seabolt was named in 24 of them. One count charged the three with violating the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-4 (a) ("Street Gang Act"), by engaging in a pattern of criminal conduct between April 1, 1999, and January 2, 2000.[2] Seabolt and Smith were also charged with the September 17, 1999, armed robbery of a convenience store.[3] All three were also charged with the December 28, 1999, malice murder of Dale.[4] The other charges against Seabolt included arson, aggravated

---

[1] Dale was killed on December 28, 1999. On June 6, 2000, a Hall County grand jury returned a 30 count indictment against Seabolt, his brother Nathan Seabolt, and Brandon Wayne Smith, alleging that they had committed the malice murder of Dale and other crimes occurring between April 1, 1999, and January 2, 2000. On December 19, 2003, Seabolt pled guilty to all charges against him. That same day, Seabolt was sentenced to: a term of life in prison for the malice murder of Dale; a consecutive term of life in prison for the September 17, 1999 armed robbery of a convenience store; a term of fifteen years in prison (which could be served on probation) for violating the Georgia Street Gang Terrorism and Prevention Act, to be served consecutively to the second life term; a term of ten years in prison for possessing a sawed off rifle during the commission of malice murder (which could be served on probation), to be consecutive to the fifteen-year term for violating the Georgia Street Gang Terrorism and Prevention Act; and various terms of five or ten years in prison (all of which could be served on probation), which were to be concurrent with one of the consecutive terms. Several other charges merged with offenses for which Seabolt was sentenced or were vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). On January 9, 2004, Seabolt moved to withdraw his guilty pleas; the motion was denied on September 10, 2004. Seabolt filed his notice of appeal on October 11, 2004, the appeal was docketed in this Court on October 27, 2004, and submitted for decision on December 27, 2004.

[2] They were also charged with violating the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-4 (b), by acquiring and maintaining various proceeds of criminal activity.

[3] The indictment also alleged that the men committed the crimes of kidnapping and possession of a firearm during the commission of a felony in connection with this incident.

[4] Other charges connected with Dale's death included armed robbery, aggravated assault, burglary, felony murder during the commission of each of those offenses, arson, and possession

assault, kidnapping, intimidating a witness, burglary, and posses-
sion of certain firearms during the commission of various crimes.
Seabolt was 15 years old at the time of the indictment. After nego-
tiations, and shortly after Smith pled guilty to his charges, Seabolt
entered guilty pleas to all the charges he faced. He was sentenced to
two consecutive life terms, and various other terms of incarceration.

Seabolt then moved to withdraw his guilty pleas, contending that
they were not entered voluntarily and knowingly due to ineffective
assistance of counsel. He also filed a motion to set aside judgments
that he contended were void. These motions were denied.

1. Seabolt contends that his convictions for some of the crimes in
the indictment are void because he was a juvenile at the time they
were committed, jurisdiction over these incidents lay in the juvenile
court, and the superior court did not have jurisdiction over these
offenses. He concedes that the superior court had jurisdiction over the
crimes enumerated in OCGA § 15-11-28 (b) (2) (A), namely murder
and armed robbery, and any other crimes committed during the
incidents of murder and armed robbery, but argues that the counts
that did not relate to murder or armed robbery could only be brought
in juvenile court as delinquent acts.[5]

This Court has previously recognized that acts committed by
juveniles which would constitute crimes if they were committed by
adults, but are not crimes specifically named in the statute setting
forth superior court jurisdiction over criminal acts by juveniles, may
still come within the superior court's jurisdiction. "[T]he superior
court is not divested of jurisdiction merely because some, but not all,
evidence of criminal acts is beyond the scope of the superior court's
jurisdiction, so long as that evidence stems from the same criminal
transaction which vests the superior court with jurisdiction." *Rey-
nolds v. State*, 266 Ga. 235, 237 (2) (466 SE2d 218) (1996).

> "[T]he concurrent jurisdiction of the superior court over
> capital felonies committed by juveniles must necessarily
> extend to related lesser crimes which are part of the same
> criminal transaction. To rule otherwise would be to bisect
> criminal conduct artificially and require the state to follow
> two procedures with no substantive meaning other than to
> satisfy procedural requirements, with the end result that
> the case involving the lesser crime would be instituted in

---

of firearms during the commission of several of the various crimes.

[5] These challenged charges include burglary, aggravated assault, and influencing a
witness, which were alleged to have occurred on different dates than the armed robbery and
murder charges, and involved different victims. The record does not show that any of these
charges were transferred from juvenile court. See OCGA § 15-11-30.2.

juvenile court and transferred to the superior court, OCGA § [15-11-30.2], and the juvenile would still be tried for the lesser crime along with the crime giving the superior court concurrent jurisdiction. There is no loss of substantive protection of the juvenile, and the public's rights should not be impeded by meaningless procedural steps which delay the judicial process and conceivably could lead to the frustration of justice under the rigorous requirements of the double jeopardy clause."

Id. at 236 (1), quoting *Worthy v. State*, 253 Ga. 661, 662 (1) (324 SE2d 431) (1985).

This concept applies here. In one of the counts alleging a violation of the Street Gang Act, Seabolt was charged with participating in a "pattern of criminal street gang activity" that included the acts constituting the separate charges of armed robbery and murder. Thus, part of that which the State was required to prove in order to convict Seabolt of violating the Street Gang Act is that he committed acts constituting murder and armed robbery. The crimes of murder and armed robbery must be tried in superior court, and accordingly, jurisdiction to try the count alleging a violation of the Street Gang Act is also proper in the superior court. Similarly, as this Street Gang Act count is properly before the superior court, the superior court's jurisdiction necessarily extends to the related lesser crimes that are alleged to be part of the pattern of criminal gang activity that constitutes the violation of the Street Gang Act.

2. Seabolt contends that he did not receive effective representation by trial counsel. In order to prevail on this claim, he must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, Seabolt must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of representation and under the particular circumstances of the case. Id. at 784. To meet the second prong, he must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty but would have insisted on going to trial. *State v. Heath*, 277 Ga. 337, 338 (588 SE2d 738) (2003). " '[W]e accept

the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Seabolt testified that counsel stated that he would be paroled in nine years if he pled guilty. Seabolt's mother and stepfather testified to the same effect. Counsel testified that this was not true, and that he had repeatedly told Seabolt that the decision about parole was to be made by the Board of Pardons and Paroles. Counsel also testified that although he told Seabolt what he believed would be a likely result, he did not in any way promise a specific term of incarceration. The trial court specifically credited counsel's testimony, and was authorized to do so. See *Curry v. State*, 238 Ga. App. 511, 522 (5) (519 SE2d 269) (1999).

Seabolt asserts that trial counsel did not consider the parole implications of two consecutive life sentences in conjunction with OCGA § 42-9-39 (c),[6] and that had counsel done so, he would have realized that Seabolt was not eligible for parole for 20 years and would not have advised Seabolt that he would be eligible for parole in nine years, and that without such an assurance, Seabolt would have chosen to go to trial. See *Gerisch v. Meadows*, 278 Ga. 641 (604 SE2d 462) (2004). First, as noted above, the court found that counsel did not advise Seabolt that he would be eligible for parole in nine years, and never guaranteed that Seabolt would be paroled in any specific term of years. Second, counsel testified that he explored the implications of the two life sentences, and was told by a member of the Board of Pardons and Paroles that the two crimes for which Seabolt received life sentences would not be considered as connected within the meaning of OCGA § 42-9-39 (c), and would not result in the same treatment as if Seabolt had "committed a double homicide ... [which] would be a harsher sentence than a convenience store robbery and later on a killing." Counsel also testified that, under his own reading of OCGA § 42-9-39 (c), the consecutive life sentences for armed robbery and murder did not require that the Board of Pardons and Paroles wait until Seabolt had served 20 years before considering him for parole.

---

[6] OCGA § 42-9-39 (c) reads:

When a person receives consecutive life sentences as the result of offenses occurring in the same series of acts and any one of the life sentences is imposed for the crime of murder, such person shall serve consecutive ten-year periods for each such sentence, up to a maximum of 30 years, before being eligible for parole consideration.

Seabolt does not produce any evidence that the Board of Pardons and Paroles will consider that the armed robbery and murder sentences require that he serve 20 years before being considered for parole. But, nevertheless, Seabolt essentially argues that, as a matter of law, if the armed robbery of September 17, 1999, and the murder of December 28, 1999, are considered as part of the "pattern of criminal street gang activity" for purposes of violating the Street Gang Act, they must necessarily also be considered "offenses occurring in the same series of acts" within the meaning of OCGA § 42-9-39 (c). But, he does not provide any legal authority to support the proposition that the two very differently worded statutory provisions are equivalent, and we find none.

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 30, 2005.

*Valpey & Parks, Gregory W. Valpey, Adam & Talley, Jeffery C. Talley,* for appellant.

*Jason Deal, District Attorney, Lee Darragh, Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General,* for appellee.

