**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 24, 2013**

# In the Court of Appeals of Georgia

A13A0239. SPINKS v. THE STATE.

R<small>AY</small>, Judge.

After a jury trial, Richard F. Spinks, an alias for a man whose real name is Robert Earl Lee,[1] was convicted of burglary and criminal trespass, OCGA §§ 16-7-1 and 16-7-21, respectively. He appeals the trial court's denial of his motion for a new trial contending in five enumerations of error that he received ineffective assistance of counsel and in an additional enumeration that the trial court erred in admitting similar transaction evidence. For the reasons that follow, we affirm.

Although Spinks does not challenge the sufficiency of the evidence used to convict him, we recount it briefly for clarity. Construed most favorably to support the

---

[1] Spinks is one of a number of aliases used by the appellant. Various names appear in documents in the record or in the trial transcript. Throughout this opinion, we will refer to him as Spinks.

verdict, the evidence shows that on September 2, 2009, when the manager of a BP gas station in Marietta arrived at work, he noticed that slats on a louvered portion of his office door had been removed and damaged, and that his filing cabinet and drawers had been ransacked. The manager reviewed the store's surveillance video and saw a man, later identified as Spinks, removing the slats from the door and entering restricted areas of the store, including a locked storeroom containing excess inventory and a computer. The video, which was played in color on a high definition 60-inch screen for the jury, showed Spinks wearing blue jeans and a black t-shirt with a large white circular design, as well as a black Coca-Cola ball cap. A police officer stopped Spinks about an hour later on an unrelated matter about two blocks from the BP station. The officer described Spinks as wearing or possessing the same clothing shown in the video, as did a police officer who later interviewed him at the station. Cameras that monitored the store's outside area recorded images of a red GMC Jimmy vehicle in the parking area of the BP station, and when Spinks was stopped by police on the unrelated matter, he was driving a red GMC Jimmy. The officers who dealt with Spinks on the unrelated matter did not initially know about the BP burglary, but later connected Spinks to the BP burglary after viewing the surveillance video.

2

1. The evidence was sufficient to sustain the convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt. 2781, 61 LE2d 560) (1979). See also *Manning v. State*, 137 Ga. App. 311, 311 (223 SE2d 503) (1976) (evidence sufficient to sustain conviction for burglary even though victim sustained no loss).

2. Spinks argues that the trial court erred in admitting evidence of two similar transactions showing he was involved in burglaries at other gas station convenience stores.

When reviewing the admissibility of similar transaction evidence,

[w]e review a trial court's evidentiary rulings under an abuse of discretion standard . . . however, we accept a trial court's factual findings unless they are clearly erroneous, and this is even more apparent where, as here, the purpose of those findings is the application of a mandatory test.

(Citations and punctuation omitted.) *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012). That mandatory test requires the State to show, as to each independent similar act, that it is seeking to admit the evidence for an appropriate purpose, that there is sufficient evidence to show that the accused committed the act, and that there is sufficient connection or similarity between the independent act and the crime charged

3

such that the former tends to prove the latter. *Long v. State*, 307 Ga. App. 669, 672 (2) (705 SE2d 889) (2011).

At trial, after the court properly instructed the jury on similar transactions, evidence was admitted of a similar transaction that occurred at a convenience store attached to a Chevron station near the interstate, where an individual broke into a locked office and storeroom marked "employees only," and stole cartons of cigarettes at about 7:30 p.m. Spinks was with that individual, and he created a diversion by spilling hot coffee on his hand and screaming, while another individual took the cigarettes out of the store in garbage bags, which were loaded into a vehicle. Spinks arrived at the Chevron and left in the same vehicle with the individual who took the cigarettes. The tag number on the vehicle was registered to Spinks' alias Robert Earl Lee. Two Chevron employees identified Spinks in photo lineups.

The second similar transaction involved a burglary at the convenience store attached to a Pilot gas station right off the interstate. An employee who was stocking drinks at the store saw Spinks in a stock room that is kept locked and is labeled for employees only, and had his manager call the police after Spinks claimed to be looking for a place to wash his hands. The door to a back stockroom containing electronics had been damaged, and two of the locks were partially broken. An

4

employee who did not attend a lineup identified Spinks at trial. The jury also saw store surveillance video of Spinks in the storage room. Spinks left in a vehicle with a tag number registered to his alias Robert Earl Lee.

> When examining whether transactions are sufficiently similar,
>
> this Court must focus on the similarities between the two acts rather than the dissimilarities. While there must be proof of a sufficient similarity between the independent offense[s] and the instant crime charged, the . . . crimes need not be carbon copies of one another to be admissible.

(Citation omitted.) *Reed*, supra.

The testimony of the witnesses in the respective Chevron and Pilot incidents as to the type of store involved (a convenience store attached to a gas station), the presence of Spinks' or his accomplice in employees-only areas where items such as cigarettes, drinks, and electronics were stored and could be taken, and the incidents taking place at a time of day when the stores were open and employees were present, all were relevant for the State's proper purpose of showing bent of mind or intent, course of conduct, and common plan or scheme. *Thomas v. State*, 290 Ga. 653, 656 (2) (723 SE2d 885) (2012). Further, "these similarities are more than adequate to satisfy the State's burden of showing a sufficient connection between the similar offense and the offense for which the accused is being tried such that proof of the

former tends to prove the latter." (Citation and punctuation omitted.) *Kennedy v. State*, 298 Ga. App. 372, 375-376 (2) (680 SE2d 478) (2009) (both offenses were smash-and-grab crimes committed at commercial establishments very near the interstate); *Long*, supra at 671 (1), 673 (2) (b) (transactions were similar where defendant entered residential areas he was not authorized to be in, and where evidence contradicted his innocent explanations as to why he was there). We find no error in the trial court's admission of these similar transactions.

3. In five enumerations of error, Spinks argues that he received ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, a criminal defendant must show that his counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SC 2052, 80 LE2d 674) (1984). "The likelihood of a different result must be substantial, not just conceivable." (Citation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012). We are not required to address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either one of them, and "a court

6

need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, supra at 697 (IV). There is a strong presumption that counsel's conduct falls within the range of reasonable professional judgment. Id. at 689 (III) (A). In challenging counsel's strategic decisions, a defendant must show "that no competent attorney, under similar circumstances, would have made [the same decision]." (Citation and punctuation omitted.) *Davis v. State* 290 Ga. 584, 585-586 (2) (723 SE2d 431) (2012).

(a) Spinks argues that his trial counsel was ineffective for failing to object to hearsay testimony from a police officer who testified that she was not GCIC certified, but had someone else run the vehicle tag number reported by a witness in the Chevron similar transaction and that the vehicle was registered to Spinks.

At the motion for new trial hearing, trial counsel testified that he made a strategic decision not to object, essentially in an attempt to confuse the jury over the different vehicles used in the Chevron similar transaction and in the instant case. The vehicle used in the Chevron similar transaction and registered to Spinks was a tan Buick, while the vehicle registered to Spinks in the instant case was a red GMC Jimmy. Trial counsel testified that the officer's testimony "would help to lead the jury

in another direction. . . . I didn't think that was bad testimony. It was a different type car my client was driving. As a defense attorney, you want things that might confuse a jury." This decision not to object was a legitimate trial strategy that falls within the range of professional conduct. See *Durham v. State*, 292 Ga. 239, 241-242 (4) (a) (734 SE2d 377) (2012) (assistance not ineffective where trial counsel made strategic decision not to object to hearsay in order to avoid calling the jury's attention to testimony he believed was not harmful to his client).

(b) Spinks argues that his trial counsel was ineffective in not objecting to testimony that allegedly placed his character at issue. The specific testimony at issue was elicited from police officers who stopped him on an unrelated matter shortly after the BP burglary, and Spinks alleges that this testimony indicated that he was in police custody on an unrelated charge. Spinks points to the testimony of two officers who interviewed Spinks after the burglary and who testified that Spinks was taken to the precinct, and who also testified, after watching a video of the BP incident, that Spinks was wearing the same clothing during their interviews, except for a baseball cap that was "in his property." Spinks also argues that the prosecutor improperly placed his character into evidence during closing arguments by stating that the officers interviewed him in an unrelated case and that his photograph was taken.

8

First, Spinks elicited no testimony on this issue at the motion for new trial hearing. "[I]n the absence of testimony to the contrary, counsel's actions are presumed strategic, and counsel's decisions on matters of tactic and strategy, even if unwise, do not amount to ineffective assistance of counsel." (Footnotes omitted.) *Swint v. State*, 250 Ga. App. 573, 573 (552 SE2d 504) (2001). Further, given that such testimony and closing argument could refer to Spinks' being interviewed as a potential witness – as opposed to being a suspect or being in custody – Spinks has failed to show how his counsel's failure to object has prejudiced him. See *Hill*, supra.

(c) Spinks contends that trial counsel was ineffective in failing to object to leading questions the prosecutor asked of two witnesses. However, he elicited no testimony at the motion for new trial hearing on the issue of leading questions. In the absence of evidence to the contrary, trial counsel's actions are presumed to be strategic, and there is no support for a claim of ineffective assistance of counsel. *Swint*, supra.

The allegedly leading questions at issue dealt generally with matters related to identity, and trial counsel testified throughout that he made strategic decisions not to object to identification-related testimony as a means of preserving credibility given that the video evidence was so strong. This enumeration lacks merit. See id.

9

(d) Spinks argues that trial counsel was ineffective in failing to object when the prosecutor asked a police officer if Spinks was the person depicted in the BP surveillance video, and the officer said yes. Spinks contends that identification of a perpetrator is an ultimate issue reserved for the jury. He argues that lay witness testimony on identity, as in the instant case, is appropriate only if there is some basis for concluding that the witness is more likely to identify the defendant correctly than the jury would be, for example, if the defendant's appearance has changed. In support of his position, Spinks cites *Grimes v. State*, 291 Ga. App. 585, 590 (2) (662 SE2d 346) (2008), but this case is distinguishable because the trial counsel in *Grimes* testified that he did not object because he believed such testimony was permissible; it was not, and trial counsel's decision was not strategic. Id. In the instant case, trial counsel made a strategic decision not to object, and testified about why at the motion for new trial hearing: "Based on my opinion, you lose credibility with the jury if you start going down those lines. They had a high definition video of [Spinks] in the same outfit he was pulled over in a half hour later." Declining to object to testimony as a tactical matter in order to preserve credibility with the jury can be considered reasonable trial strategy. See *Nichols v. State*, 288 Ga. App. 118, 122 (3) (b) (653 SE2d 300) (2007). "Given [Spinks'] inability to demonstrate that trial counsel's

10

failure to object was anything other than trial tactics, he has not established an ineffective assistance claim." Id.

(e) Spinks asserts that trial counsel was ineffective in failing to provide him with relevant evidence he needed to make an informed decision about whether to accept a negotiated plea. Spinks testified at the motion for new trial hearing that he did not see the surveillance video until it was played for the jury at trial.[2] Spinks also testified that trial counsel did not tell him about the State's similar transactions evidence until he attended a motions hearing on the issue 11 days prior to trial, and that trial counsel did not tell him he could face punishment as a recidivist until that hearing, when he had to decide whether to accept the State's plea offer. Spinks testified that if he had seen the video and known about the similar transaction evidence earlier, he would have accepted the plea. However, Spinks' trial counsel testified that he obtained the video from the prosecution and showed it to his client several months prior to trial, that he reviewed the State's similar transactions notice with Spinks several months before trial and filed a motion to suppress it, and that he

---

[2] Spinks also points to the prosecutor's statement during a motions hearing immediately prior to trial indicating that defense counsel did not obtain the BP surveillance video until the day before trial. Spinks did not call the prosecutor to testify to this at the motion for new trial hearing.

11

told Spinks he could face a recidivist sentence of 20 years if he lost at trial. Trial counsel further testified that he negotiated a plea of 10 years with 5 to serve, but that Spinks was only interested a plea of 10 years with 3 to serve.

The above-described conflicting testimony raised a credibility issue for the trial court, and we accept the trial court's credibility determinations unless they are clearly erroneous. *Seabolt v. State*, 279 Ga. 518, 520-521 (2) (616 SE2d 448) (2005). Here, the trial court chose to credit defense counsel's testimony, and we cannot say that this decision was clearly erroneous. Id. (trial court not clearly erroneous in crediting defense counsel's testimony over that of defendant and two other witnesses). Further, we also have recognized the "self-serving nature of a defendant's post-conviction testimony regarding his intent with respect to a plea offer, [and] have required some further 'objective evidence' that defendant would have accepted a plea offer." (Footnote omitted.) *Childrey v. State*, 294 Ga. App. 896, 899 (670 SE2d 536) (2009).

It is undisputed that Spinks, while at the similar transactions hearing, was informed by the prosecutor in open court – pretermitting whether he was previously informed by his counsel – of the plea offer and still rejected it. The conflict between this evidence coupled with his lawyer's testimony, versus his testimony at the motion for new trial hearing, presents factual issues primarily for resolution by the trial court,

12

and "supports a finding, implicit in the trial court's ruling, that there was no reasonable probability that [Spinks] would have pled guilty but for counsel's ineffectiveness." (Punctuation and footnote omitted.) Id. at 901.

Spinks' ineffective assistance claims, in toto, lack merit.

*Judgment affirmed. Barnes, P. J., and Miller, J., concur.*