**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 15, 2022**

# In the Court of Appeals of Georgia

A20A1973. BURRELL v. THE STATE.

PIPKIN, Judge.

Appellant Sherron Burrell was convicted of kidnapping with bodily injury, aggravated assault, terroristic threat, and battery; he was sentenced to life imprisonment.[1] On appeal, Burrell argues that the superior court lacked jurisdiction over him absent a transfer order from juvenile court, that the evidence was insufficient to sustain his conviction for kidnapping with bodily injury, that the superior court erred

---

[1] Burrell challenges the constitutionality of OCGA § 16-5-40 (d) (4), which mandates a sentence of life imprisonment for his conviction for kidnapping with bodily injury; consequently, we transferred this appeal to the Supreme Court of Georgia. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II. However, our Supreme Court transferred the appeal back to this Court after concluding that Burrell's constitutional claim was not properly preserved for appellate review. See Case No. S20A1562 (transferred November 2, 2020). See also *Amos v. State*, 298 Ga. 804, 807 (2) (783 SE2d 900) (2016). Accordingly, we do not consider this claim.

by admitting other acts evidence under OCGA § 24-4-404 (b), and that trial counsel was ineffective. As more fully explained below, we see no basis for reversal and affirm the trial court.

When viewed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced below established as follows. The victim, Katie Cook, testified that she first met Burrell – who was 15 years old at the time – in early July 2013 when he approached her in the front yard of her residence, asking for directions and to use her telephone. Cook found Burrell's behavior strange and asked why he needed to use a telephone given that he was already carrying one; Burrell responded that his cell phone had died, and Cook permitted Burrell into her home to use her son's phone. Once in the residence, Burrell encountered Cook's son, Dillon, and it was apparent that the two were acquainted from high school. Cook testified that, after encountering Dillon, Burrell claimed to be tired and "bolted out of [the] house and out the door."

Approximately two weeks later, Cook was again outside – sitting at the edge of her driveway enjoying the summer night – when someone approached her from behind and asked, "Ma'am, are you ok?" and then "Where's your son at?" Cook testified that she immediately recognized Burrell's voice. Before she could answer, Burrell pulled

2

her to an upright position, pressed a knife to her side, and placed a hand over her mouth; he warned Cook that he would kill her if she screamed. Burrell dragged Cook five to ten feet toward her house, telling her that he was taking her inside. Cook attempted to free herself from Burrell and fought for control of the knife; she came face-to-face with Burrell and again recognized him. During the struggle, Burrell hit Cook and attempted to overpower her, but Cook screamed and was able to secure the knife. Cook fell face down on the ground, and Burrell landed on top of her; Burell bit Cook twice on the face and then "took off running." Cook was left scraped and bloodied by the incident.

Law enforcement arrived on scene and discovered a knife lying in Cook's driveway. Because Cook was able to identify Burrell, officers made contact with his father, who lived just a block away. Burrell's father told to investigators that he had received a telephone call from his son reporting that "he had just done a very bad thing and [that] he was not coming home."

The jury also heard from A. O., whose testimony the superior court deemed admissible pursuant to OCGA § 24-4-404 (b). A. O., who was 16 years old at the time of trial, testified that she and Burrell attended school together and that they were in an on-again, off-again romantic relationship for years. A. O. testified that, in the early

3

morning hours of April 7, 2013, – just three months before the incident with Cook – Burrell entered her residence without permission and appeared at her doorway with a knife, telling her to keep quiet. After entering her bedroom and locking the door, Burrell raped and sexually assaulted A. O. During the incident, Burrell pressed the knife to A. O.'s hip, bit A. O. on her face and neck, and threatened to kill her family if she reported the incident.

1. We first address the assertion that the superior court lacked jurisdiction to try Burrell because, he says, the charges in this case should have originated in the juvenile court. A brief review of the procedural history of this prosecution is necessary to address this claim.

All proceedings in this case occurred in the superior court. Burrell was arrested on July 14, 2013, the day after the attack on Cook. At that time, he was charged by warrants with offenses arising from *two* incidents: the first incident occurred on July 12, 2013, involving victim S. G., and the second incident occurred on July 13, 2013, involving victim Cook. With respect to the July 12 incident involving S. G., Burrell was charged with rape, aggravated sodomy, aggravated assault, and burglary. With respect to the July 13 incident involving Cook, Burrell was initially charged with battery, kidnapping, and aggravated assault. The record reflects that the arrest warrants

for both cases reference the same offense tracking number. In October 2013, Burrell was indicted for both incidents in a single indictment; *important to our later discussion*, the indicted offenses were not identical to the charges on which he was initially arrested.

The October 2013 indictment charged Burrell with rape, aggravated sodomy, aggravated sexual battery, burglary in the first degree, false imprisonment, and three counts of aggravated assault with respect to the July 12 incident involving S. G. With respect to the July 13 incident involving Cook, the indictment charged Burrell with *kidnapping with bodily injury*, aggravated assault, battery, and terroristic threat. The charges related to the July 12 incident were eventually nolle prosequied, and Burrell was tried in the superior court on the charges stemming from the July 13 incident involving Cook.

Under former OCGA § 15-11-28 (b) (1),[2] the juvenile court and the superior court share concurrent jurisdiction

---

[2] Because the crimes occurred in 2013, the old Juvenile Code applies here. See *In re D.H.*, 332 Ga. App. 274, 275-276 (1) (772 SE2d 70) (2015) (recognizing that Georgia's new Juvenile Code applies to "all offenses which occur and juvenile proceedings" commenced on or after January 1, 2014, while "[a]ny offenses occurring before January 1, 2014, shall be governed by the statute in effect at the time of such offense") (citations and punctuation omitted).

5

over a child who is alleged to have committed a delinquent act which would be considered a crime if tried in a superior court and for which the child may be punished by loss of life, imprisonment for life without the possibility of parole, or confinement for life in a penal institution.

However, the superior court retains exclusive jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed certain enumerated offenses, including rape. See OCGA § 15-11-28 (b) (A) (2) (2013). That said, we keep in mind that "[t]he superior court is not divested of jurisdiction merely because some, but not all, evidence of criminal acts is beyond the scope of the superior court's jurisdiction, so long as that evidence stems from the same criminal transaction which vests the superior court with jurisdiction." (Citation and punctuation omitted.) *Seabolt v. State*, 279 Ga. 518, 519 (1) (616 SE2d 448) (2005).

Burrell acknowledges that the superior court may have had exclusive original jurisdiction over the July 12 offenses as a result of the rape charge. He contends, though, that the superior court lacked jurisdiction over the crimes set out in the arrest warrant stemming from the July 13 incident because, he says, they were not connected to the offenses arising out of the July 12 incident and because they were not punishable by loss of life, imprisonment for life without the possibility of parole, or confinement

6

for life.[3] We note that Burrell's argument turns on his position that the July 12 and July 13 incidents are unrelated, but that Burrell never argued below that the charges here did not stem from the same criminal transaction or that the two incidents should have been considered separately for the purposes of jurisdiction. Indeed, Burrell conceded below that the superior court retained exclusive jurisdiction over the entirety of the case against him.

Nevertheless, even if we were to consider the merits of this enumeration, Burrell has failed to demonstrate error by the record on appeal that the superior court erroneously retained jurisdiction here. See *Hornbuckle v. State*, 300 Ga. 750, 753 (2) (797 SE2d 113) (2017) ("The appellant bears the burden of proving error by the appellate record.") (citation and punctuation omitted).

As an initial matter, the details of the July 12 incident involving S. G. are not developed in the record because those charges were nolle prosequied shortly before Burrell's trial; consequently, this Court is unable to compare the two incidents at issue here to evaluate possible error. While Burrell argues that the "July 13 incident was a separate incident involving a different victim and occurred on a different day," these

---

[3] As noted above, Burrell was initially charged with kidnapping but was later indicted on the charge of kidnapping with bodily injury.

factors alone are not dispositive and do not establish error. See *Seabolt*, 279 Ga. at 449-450 (1) (superior court had jurisdiction over a number of offenses committed by a juvenile over the course of many months). Instead, for all that appears before us, the incidents occurred within 48 hours of each other, in close geographical proximity, and involved similar violent offenses accomplished with a knife. In short, there is nothing in the record before this Court to demonstrate that the superior court erred by exercising jurisdiction over Burrell.

Finally, we note that the juvenile court never assumed jurisdiction over any of the offenses. Thus, even if the July 13 offenses did not initially fall within the jurisdiction of the superior court, once the State indicted Burrell on kidnapping with bodily injury – which carries a mandatory sentence of life imprisonment, see OCGA § 16-5-40 (d) (4) – the superior court gained concurrent jurisdiction over the kidnapping charge and the accompanying offenses.[4] See *In re K.C.*, 290 Ga. App. 416, 417 (659 SE2d 821) (2008) (even though original charges brought in superior court should have been filed in juvenile court, superior court gained jurisdiction over matter

---

[4] There is no argument that the kidnapping charge is distinct from the other charges arising from the July 13 incident.

8

once the State amended charges). Accordingly, there is no merit to this enumeration of error.

2. Burrell asserts that the evidence was insufficient to sustain his conviction for kidnapping with bodily injury, arguing that "the movement of the victim here was not against her will" and that, even if it were, "it was merely incidental to the aggravated assault." This argument is also meritless.

"When an appellant challenges the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation, punctuation, and emphasis omitted.) *Jefferson v. State*, 360 Ga. App. 869, 870 (1) (862 SE2d 346) (2021).

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a). The offense of kidnapping requires only "slight movement . . . provided, however, that any such slight movement . . . which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." OCGA § 16-5-40 (b) (1). Such "slight movement" is not "merely incidental" to another

9

crime if the movement conceals or isolates the victim, makes the commission of the other offense substantially easier, lessens the risk of detection, or is intended to avoid apprehension.[5] OCGA § 16-5-40 (b) (2).

The crux of Burrell's claim is that there was no kidnapping because, he says, Cook's movement was a consequence of her decision to fight him and was merely incidental to the struggle for the knife. However, Cook's testimony makes plain that, after Burrell came up behind her with a knife, he told her that they were "going inside" and that he then "picked [her] up, drug [her] up and drug [her] backwards, probably about five to ten feet." Thus, while there was a subsequent struggle for the knife, the incident began with Burrell's announcing his intention to move the victim and then physically moving her, which resulted in injury to the victim. Moreover, even if the movement could be considered incidental to the aggravated assault in this case – namely Burrell placing Cook in reasonable apprehension of immediately receiving a violent injury with a deadly weapon – Burrell's movement of Cook was designed to isolate her and to lessen the risk of detection. Under either scenario, the evidence was

---

[5] We remind the parties that their reliance on *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), and its progeny is misplaced. "*Garza* has been superseded by statute for offenses occurring after July 1, 2009." *Gonzalez v. Hart*, 297 Ga. 670, 672 n.3 (777 SE2d 456) (2015).

10

sufficient to establish kidnapping with bodily injury. See *Alexander v. State*, 348 Ga. App. 859, 865 (1) (825 SE2d 405) (2019); *Floyd v. State*, 342 Ga. App. 438, 441 (1) (a) (803 SE2d 597) (2017).

3. Burrell also argues that the superior court erred by allowing A. O. to testify pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). We disagree.

When determining the admissibility of evidence under Rule 404 (b), we use the following three-part test:

> (1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the [State] must offer sufficient proof so that the jury could find that defendant committed the act.

(Citation and punctuation omitted.) *Smart v. State*, 299 Ga. 414, 417 (2) (788 SE2d 442) (2016). We now address each question in turn, reviewing the superior court's decision for an abuse of discretion. Id.

(a) Under Rule 404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or

11

absence of mistake or accident." Here, the State offered the evidence to prove, among

other things, plan.[6]

> Evidence admitted under Rule 404 (b) to show the defendant's plan or
> preparation often shows the planning of or preparation of the charged
> offense. . . . In other cases, evidence of related or similar prior offenses
> has been admitted because it tended to prove that the defendant employed
> a 'common scheme' to commit a series of similar crimes. This approach
> blends the purpose of plan with the purpose of identity – showing that a
> distinctive plan was used tends to prove that the same person executed
> both plans.

(Citations, punctuation, and emphasis omitted.) *Heard v. State*, 306 Ga. 76, 87-88 (3)

(e) (844 SE2d 791) (2020). Whether A. O.'s testimony was admissible under this

"distinctive-plan purpose" turns on whether the evidence would be admissible to show

identity. Id.

> [E]vidence offered to prove identity must satisfy a particularly stringent
> analysis. When extrinsic offense evidence is introduced to prove identity,
> the likeness of the offenses is the crucial consideration. The physical
> similarity must be such that it marks the offenses as the handiwork of the
> accused. In other words, the evidence must demonstrate a modus

---

[6] The superior court also determined that the testimony was admissible to prove intent; however, because we conclude that A. O.'s testimony was admissible to prove plan, we need not address whether it was also admissible to prove intent. See *Hood v. State*, 309 Ga. 495, 501 (2) n.8 (847 SE2d 172) (2020).

12

operandi. The extrinsic act must be a "signature" crime, and the defendant must have used a modus operandi that is uniquely his. The signature trait requirement is imposed to insure that the [State] is not relying on an inference based on mere character – that a defendant has a propensity for criminal behavior. Evidence cannot be used to prove identity simply because the defendant has at other times committed the same commonplace variety of criminal act.

(Citations and punctuation omitted.) *United States v. Phaknikone*, 605 F3d 1099, 1108 (III) (A) (11th Cir. 2010). "[W]e are charged to consider the dissimilarities as well as similarities in determining whether other acts evidence is admissible to show identity." *Brooks v. State*, 298 Ga. 722, 725 (2) (783 SE2d 895) (2016). However, "the charged crimes and the prior crime need not be, and never will be, identical in every detail. But they must possess a common feature or features that make it very likely that the unknown perpetrator of the charged crime and the known perpetrator of the prior crime are the same person." (Citation and punctuation omitted.) *Scott v. State*, 357 Ga. App. 289, 293 (1) (850 SE2d 477) (2020).

Burrell argues that the two offenses "were not similar enough to survive the 'particularly stringent analysis' required to admit crimes as 'handiwork' or 'signature' of the accused." While we recognize that A. O., a teenager, was a former intimate partner of Burrell's and that Cook, an adult, was at most, an acquittance, the fact

13

remains that both victims were known to Burrell prior to the attacks. Further, there are striking similarities between the two events, which occurred only months part. In each instance, Burrell appeared at the victim's home armed with a knife, told the victim to keep quiet, held a knife to the victim's torso, attacked the victim, threatened her, and bit her in the face. Even though Burrell argues that there was no evidence that he intended or attempted to rape Cook – noting that he was not charged with rape – it is reasonable to infer from the evidence here that Burrell intended to seclude Cook in her residence for some nefarious purpose but was thwarted by Cook's resistence. Indeed, "[w]hile the two crimes were not exactly the same, the manner in which they were carried out present[s] the same unique characteristics." *United States v. Vigne*, 571 Fed.Appx. 932, 934 (I) (11th Cir. 2014). See also *United States v. Clemons*, 32 F3d 1504, 1508-1510 (III) (11th Cir. 1994); *United States v. Miller*, 959 F2d 1535, 1538-1540 (11th Cir. 1992); *Brannon v. State*, 298 Ga. 601, 607 (4) (783 SE2d 642) (2016). Accordingly, the evidence here was offered for a proper purpose.

(b) Our analysis does not conclude merely because A. O.'s testimony was relevant to an issue other than Burrell's character. Instead,

> [w]e now must address whether the probative value of the other acts evidence is substantially outweighed by its unfair prejudice, i.e., the evidence must satisfy the requirements of [OCGA § 24-4-403 ("Rule

14

403")]. . . . [A]s we have explained before, the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly. The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

(Citations and punctuation omitted.) *Smart*, 299 Ga. at 418 (2) (b).

Burrell argues that A. O.'s testimony had scant probative value, asserting that it was unduly prejudicial to permit the State to call Burrell a rapist. However, A. O.'s testimony was not elicited here merely to cast Burrell as a rapist; instead, it was central to establishing Burrell's identity in this case. As Burrell recognizes on appeal, his defense at trial was that he was not the perpetrator; thus, the primary question at trial was *who* committed the crimes against Cook. Cook was the sole eyewitness, and while she identified Burrell at the scene and at trial, her identification was based on meeting Burrell once and seeing his face for a matter of seconds in the dark on the night of her attack. A. O.'s testimony – which described a strikingly similar offense committed by someone whose identity was not in doubt – had substantial probative value. Although "[i]t may be highly prejudicial to be cast as a rapist . . . the evidence of the [April 2013] incident was not a matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citations and punctuation omitted.) *Kirby*

15

*v. State*, 304 Ga. 472, 484 (4) (a) (i) (819 SE2d 468) (2018). While Burrell was not charged with rape in connection with the incident involving Cook, he was facing charges that he attacked a woman with a knife and attempted to drag her into her house; although A. O.'s testimony was disturbing, "there was nothing inherent in this evidence that would create a risk that [Burrell] would be convicted on a ground different from proof specific to the offense charged." (Citations omitted.) *Smart*, 299 Ga. at 419 (2) (b).

(c) We also conclude that the State offered sufficient evidence for the jury to conclude that Burrell committed the acts underlying the Rule 404 (b) evidence. A.O. testified as the victim, and identified Burrell as her assailant; the State adduced photographs depicting Burrell's bite marks on A. O. This evidence was plainly sufficient to satisfy this requirement. See *United States v. Lail*, 846 F2d 1299, 1302, n. 3 (1988) (eyewitness testimony sufficient proof that defendant committed extrinsic acts under Rule 404 (b)).

Accordingly, we conclude that the superior court did not abuse its discretion in admitting A. O.'s testimony under Rule 404 (b).

4. Finally, Burrell argues that trial counsel was ineffective in two different ways. We address each argument in turn.

To succeed on his claim, Burrell must demonstrate both that his trial counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To prove deficient performance, [Burrell] must show that his lawyer performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). As to prejudice, Burrell must establish that "the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious that they likely affected the outcome of the trial." *Jones v. State*, 305 Ga. 750, 755 (4) (827 SE2d 879) (2019). "[S]atisfaction of this test is a difficult endeavor. Simply because a defendant has shown that his trial counsel performed deficiently does not lead to an automatic conclusion that he was prejudiced by counsel's deficient performance." *Davis v. State*, 306 Ga. 140, 144 (3) (829 SE2d 321) (2019). And "[i]f an appellant is unable to satisfy one prong of the *Strickland* test, it is not incumbent upon [the reviewing court] to examine the other prong." (Citation and punctuation omitted.) Id. at 143 (3).

(a) Burrell first claims that trial counsel failed to properly and timely move the superior court to transfer the case to the juvenile court. Specifically, Burrell faults trial

counsel for failing to move the superior court to transfer the matter once the July 12 charges were nolle prosequied. According to Burrell, trial counsel failed to recognize that, once the July 12 rape charge was dropped, the superior court finally had discretion to transfer the case to juvenile court. "To prevail on an ineffectiveness claim based on trial counsel's failure to file or pursue a motion, the defendant must show that the motion would have been granted had the motion been filed or pursued." *Gerbert v. State*, 339 Ga. App. 164, 179 (4) (a) (793 SE2d 131) (2016). Here, however, Burrell focuses on counsel's failure to file the motion without regard to whether it would have been granted.

Presuming that the superior court had the authority to transfer the matter to the juvenile court once the charges relating to the July 12 incident were nolle prosequied, there is no indication in the record – and Burrell makes no argument – that the superior court was required to exercise its discretion to do so. All of the charges against Burrell originated in the superior court and, at the time the July 12 charges were nolle prosequied – merely a week before trial -- the case had been pending in that court for nearly 16 months, with the superior court having already resolved countless motions. Thus, even if trial counsel had filed a motion to transfer to juvenile court, the superior court would have been within its discretion in denying the motion. See *State v.*

18

*Henderson*, 281 Ga. 623, 624 (1) (641 SE2d 515) (2007) ("Where courts have concurrent jurisdiction, the first court taking jurisdiction will retain it and a transfer may only be made as provided by law.") (citations and punctuation omitted). Accordingly, trial counsel did not perform deficiently by failing to make such a motion.[7] See *Mims v. State*, 304 Ga. 851, 859 (2) (c) (823 SE2d 235) (2019) ("In sum, because [Appellant] cannot establish that a motion to change venue would have been granted, she cannot establish that trial counsel was ineffective for failing to file one."); *Bester v. State*, 294 Ga. 195, 198 (2) (c) (751 SE2d 360) (2013) (trial counsel not ineffective for failing to file a motion in limine when the trial court would have acted within its discretion in denying the motion).

(b) Turning to the remaining claim of ineffectiveness, the record reflects that, the day before trial, Burrell accepted a plea agreement offered by the State that would have

---

[7] Burrell also claims that trial counsel was ineffective because she moved the superior court to transfer the matter when, he says, the superior court had no discretion to do so. This argument is a nonstarter. Burrell argues, in effect, that trial counsel was ineffective because she filed an allegedly meritless motion. Even assuming that trial counsel's decision here amounts to deficient performance – which is questionable – Burrell can demonstrate no prejudice as a result of what, he says, would have been a properly denied motion. See *Daugherty v. State*, 283 Ga. App. 664, 670 (5) (c) (642 SE2d 345) (2007) (no ineffective assistance of counsel flowing from the filing of an untimely motion to sever which was considered and properly denied on the merits), disapproved of on other grounds, *Hill v. State*, 360 Ga. App. 143, 147 n.4 (860 SE2d 893) (2021).

19

allowed him to avoid a possible life sentence. The next day, however, Burrell withdrew that plea, and he was ultimately convicted of kidnapping with bodily injury and was sentenced to a mandatory term of life imprisonment. Burrell now argues that "[t]rial counsel was ineffective because she failed to inform [him] that if he went to trial that he was facing a mandatory life sentence." Burrell is not entitled to relief.

Trial counsel testified at the hearing on Burrell's motion for new trial that, in discussing the plea offer with her client, "one of the things [she went] over is how much time [he was] facing if [he didn't] take a plea." In fact, as the trial court found, trial counsel advised Burrell – albeit mistakenly – that he would receive a sentence of life imprisonment without the possibility of parole if he were to go to trial and be found guilty of kidnapping with bodily injury. It is unclear from counsel's testimony whether Burrell was advised that such a sentence was mandatory or a mere possibility, but it is clear that Burrell was not advised that he was facing a *minimum* sentence of life imprisonment were he to go to trial and be found guilty of kidnapping with bodily injury. However, even assuming for the sake of this opinion that counsel performed

20

deficiently here,[8] Burrell has failed to demonstrate prejudice.

A showing a prejudice in this context requires a defendant to establish

[1] that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), [2] that the court would have accepted its terms, and [3] that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

(Citations omitted.) *Gramiak v. Beasley*, 304 Ga. 512, 515 (1) (B) (820 SE2d 50) (2018). The only issue here is whether, but for counsel's failure to advise him of the mandatory minimum, Burrell would not have withdrawn his guilty plea. In addressing the issue of prejudice, both the Supreme Court of the United States and the Supreme Court of Georgia have

emphasized the need for case-by-case analysis to determine whether record evidence shows prejudice . . . and advised courts to look to contemporaneous evidence to substantiate a defendant's post hoc

---

[8] See *Gramiak v. Beasley*, 304 Ga. 512, 514 (1) (A) (820 SE2d 50) (2018) ("A defendant is entitled to be fully informed of certain consequences of his decision to accept or reject a plea offer, including the right to the informed legal advice of counsel regarding the possible sentences that could be imposed following a conviction at trial.").

assertions that he would have chosen differently had counsel performed adequately.

(Citation and punctuation omitted.) *Yarn v. State*, 305 Ga. 421, 427 (4) (826 SE2d 1) (2019). See also *Lee v. United States*, ___ U. S. ___ (II) (C) (137 SCt 1958, 198 LE2d 476) (2017).

Here, while Burrell testified at the hearing on his motion for new trial that he would not have withdrawn his plea had he been aware of the mandatory minimum, the trial court "categorically" discounted the entirety of Burrell's testimony in favor of the testimony of his trial counsel and mother. In fact, the trial court went a step further, stating that Burrell "has a well recognized propensity to lie and misrepresent facts when he perceives that to be in his interest and that propensity was apparent from his testimony at the hearing on the motion for new trial." Before us is nothing but a cold transcript, and the trial court was in the best possible position to consider Burrell's testimony; the trial court painstakingly addressed Burrell's credibility, and we defer to that evaluation. "This Court will not second guess the trial court which heard testimony from this witness . . . and was in a position to evaluate the demeanor of the witness and the credibility of his testimony." *Varnadoe v. State*, 227 Ga. App. 663, 666 (4) (490 SE2d 517) (1997). The trial court's conclusion is bolstered by the fact that Burrell

withdrew his plea despite being advised during his plea colloquy that he was facing life imprisonment[9] and despite being repeatedly warned by trial counsel – albeit incorrectly – that, if convicted of kidnapping with bodily injury, he would spend the rest of his life in prison without the possibility of parole.[10] Given the particular circumstances of this case and the trial court's assessment of Burrell's credibility, the trial court correctly denied Burrell's claim of ineffective assistance of counsel.

*Judgment affirmed. Miller, P. J., and Hodges, J., concur.*

---

[9] We also question whether Burrell's claim is hampered by an incomplete record. The pre-trial record is silent as to why Burrell withdrew his plea; there is no motion to withdraw included in the record, and, while it appears from trial counsel's testimony that there was some hearing on the issue, there is no such transcript before us. This is notable because it is not difficult to envision a scenario in which trial counsel's advice – whether accurate or not – ultimately plays no role in a defendant's decision to go to trial (and thus leads to no prejudice), such as when a defendant maintains his innocence. See *Chun Hei Lam v. United States*, 716 F. App'x 850, 853 (III) (B) (11th Cir. 2017); *Osley v. United States*, 751 F3d 1214, 1224 (III) (A) (11th Cir. 2014); *Cleveland v. State*, 285 Ga. 142, 148 (674 SE2d 289) (2009).

[10] Indeed, trial counsel's testimony at the hearing on the motion for new trial reflects that she not only strongly advised Burrell to take the plea – and similarly advised him against withdrawing his plea – but that she actually objected when he announced that he was withdrawing his plea. "This Court has repeatedly held that, in connection with an ineffective assistance claim, a defendant cannot blame trial counsel for a decision he himself made over counsel's objection." (Citation and punctuation omitted.) *Gilmore v. State*, 341 Ga. App. 585, 588-589 (802 SE2d 27) (2017).